NEILL BROS. & CO. v. JAMES B. BILLINGSLEY.

1. SALES BY FACTORS GOVERNED BY USAGES OF TRADE. — A transaction between a cotton factor and a purchaser not made or consummated in accordance with the customs and usages observed by factors in disposing of cotton consigned to them for sale, will not

divest the consignor of title to the cotton affected by such irregular transaction.

2. PRIVATE OR PARTICULAR CUSTOMS.—It is not error to exclude testimony as to a private custom in the business of a particular house when drawn into controversy, unless such custom was known to the party sought to be affected thereby, and when such custom was different from the general usage of the trade.

3. VERDICT ON TRIAL OF RIGHT OF PROPERTY.—On the trial of a case for the right to a lot of cotton, the jury rendered a verdict as follows : " We, the jury, find the value of the cotton in question to be at this time one thousand and seventy-one $\frac{35}{100}$ ($1,071.35); and find for the plaintiff judgment in the sum of $1,180.05, with interest from 17th of July, 1873, to date, (13 months and 7 days,) $104.22 ; total, $1,284.27 (twelve hundred and eighty-four $\frac{27}{100}$ dollars). Galveston, March 26, 1874." Upon this verdict, judgment was rendered against the claimants for the cotton, together with ten per cent. damages upon the assessed value thereof, to wit, the sum of $118, and all costs, and that execution issue therefor against claimants and their sureties on the claim bond ; and in the event the claimant shall fail or refuse to return said cotton, &c., within ten days, . . . . . that plaintiffs recover of the claimants and their sureties . . . . . the sum of $1,284.27, with interest from date thereof, . . . . . together with ten per cent. damages as aforesaid, to wit, $118, and all costs, for which execution may issue : " Held, Error,—

1. The verdict did not ascertain the value of the cotton at the date of the claim bond, and should not have been received.

2. The damages calculated and allowed upon the verdict are not computed upon the ascertained value of the cotton, as required by the statute.

3. The judgment against the sureties on the claim bond for costs is not warranted.

4. The computation of interest upon the interest forming part of the verdict is not allowed by the statute.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

This is a case made under the statute for the trial of the right of property seized under process of court, and claimed by a person not party to such process. The appellee sued " The Southern Cotton Press and Manufacturing Company " for sixteen bales of cotton, described by marks and number of bales, and caused the property to be seized under writ of sequestration. Charles M. Todd and Henry M. Neill, part-

ners in business, under the name of Neill Bros. & Co., appeared as claimants, gave bond, and made the oath required by law.    An issue was made, in the District Court of Galveston county, to try the right of property between the plaintiff, Billingsley, and the claimants, Neill Bros. & Co.    A trial was had, resulting in favor of Billingsley, from which this appeal is taken by Neill Bros. & Co.    On trial, it was agreed that the plaintiff below had owned the sixteen bales of cotton in suit, and had shipped them to A. Sessums, Powell & Co., a firm doing business in Galveston as cotton factors, and that they held the cotton, in their capacity as factors, for Billingsley.    Neill Bros. & Co. claimed to have purchased this cotton, among other lots, from A. Sessums, Powell & Co., November 4, 1872.    To prove this, they introduced evidence to show, that prior to and during the season of 1872–'73, there were two modes of selling cotton usual in the Galveston market, viz., sales by sample, and sales on a basis.    The first was accomplished by an inspection by the buyer or his broker of the samples of the cotton proposed to be sold, as they lay exposed on the tables of the factor in his cotton room.    If, after such inspection, he could agree with the factor upon a round price per pound for the entire lot, good, bad, and indifferent, the sale was agreed on, and steps were taken to accomplish the agreement, generally as follows: The factor issued a weighing order on the warehouse under which the cotton sold was weighed; he also issued a classing order on the warehouse under which the buyer or his broker inspected the bales of cotton and identified their quality with that of their respective samples exposed on the factor's tables, and forming the basis of the agreement of sale.    When the weights were ascertained, and the buyer was satisfied that the bales of cotton sold corresponded in quality to that of the samples, the factor prepared an invoice, in which the aggregate weight of all the cotton sold was multiplied by the agreed average price per pound, and the sum of money so ascertained was paid by the buyer upon the delivery by the factor to him

of the invoice, and a delivery order on the warehouse for the cotton included in the invoice. This consummated the transaction.

Sales on a basis were made by an agreement between the factor and buyer, or his broker, to the sale by the one, and the purchase by the other, of a certain number of bales of cotton, at an agreed price per pound for good ordinary, (that being the grade usually quoted in the market, and to which all others were referred,) and a proportionately greater and less price per pound for higher and lower grades, respectively. As soon thereafter as practicable, the factor designated the cotton sold by marks and number of bales. It was then classed—sometimes in the warehouse from the bales themselves; sometimes from samples on the factor's tables, as might be most convenient, or as might be agreed on. The cotton was then weighed and invoiced—the number of pounds of each grade being summed up and multiplied by the price per pound of that grade. The total price being thus ascertained, the invoice, with a delivery order on the warehouse for the cotton so invoiced, was given by the factor to the buyer, who paid the amount of the invoice, and the transaction stood consummated.

Sales of cotton, whether by sample or on a basis, were usually consummated within ten days from their inception; and, in either case, it often happened that the factor gave the buyer, in advance of weighing, classification, and invoice, a delivery order on the warehouse for a part or all of the cotton sold; the buyer paying him at the time the estimated value of the cotton so delivered, leaving the final adjustment of account to be made when the exact price was ascertained by classification and weights. This was by way of advance to the factor, on account of the sale.

The sale on a basis prevailed early in the season, and also when, from bad weather or any other cause, (such as an apprehended decline in the market,) the factor desired to sell, before samples could be exposed. Some seasons a third of

the entire crop was sold in this way.    Any one familiar with cotton, can by inspection determine the grade of a particular sample, according to the standard classification in the Galveston market.

Billingsley, who had shipped sixteen bales of cotton to A. Sessums, Powell & Co., after the death of Sessums and the insolvency of the firm, brought suit for the cotton.    Neill Bros. & Co. filed an affidavit and claim bond under the statute. The particulars of the transaction between A. Sessums, Powell & Co. and Neill Bros. & Co., under which claimants based their right, are the same as in the case next preceding.

The verdict and judgment criticised, and other facts necessary are given in the opinion.    The particulars of the Galveston cotton trade given above are extracted from the brief for the appellants, and are fully verified by the record.

*J. Z. H. Scott*, for appellants.    The brief is substantially as in the preceding case.

*Flournoy & Sherwood* for appellee.

That a factor has power only to sell, and cannot in any form pledge or hypothecate, is clearly settled.    (Rodriguez *v.* Heffernan, 5 Johns. Ch., 429; Story on Agency, secs. 113–225; Story on Bail., sec. 325; 2 Kent's Comm., 7th ed., 800; Evans *v.* Potter, 2 Gall., 13, 14; The Amringe *v.* Peabody, 1 Mason, 440; De Bouchout *v.* Goldsmid, 5 Ves., 211.)

The factor may sell on cash or credit, according to established usage, without rendering himself liable.

A factor can only sell in the "usual manner."    (See Edwards on Bailments, 220, 280.)

Although a delivery order be given on goods in a warehouse or "press," and a sale be contemplated or intended at the time in good faith, still, if anything remains to be done before the actual delivery can be made, "as if the goods are to be weighed or measured," &c., the property would "not pass, and the vendor would necessarily retain his complete author-

ity as owner over them." (See Story on Sales, sec. 340, and authorities there referred to.) So also if the price has to yet be ascertained by classing. (See Hill. on Sales, 136–139.)

A factor cannot sell goods of his principal to pay an antecedent debt of his own. (Story on Sales, sec. 104, and note.)

The power and duty of the "factor" is to receive and sell. It is believed that a sale on a "basis" is not only contrary to law in a general sense, but cannot be made valid by proof of a special custom existing for a few years in any particular locality. To hold otherwise, is to determine that the agent can dispose of the property of his principal before he has received it, and even before having any knowledge that he will receive it. And also that he has the power, as to property of the principal not in his hands as yet, to speculate to his own private advantage, he receiving the profits himself, if the price in market should at delivery be less than the "basis," and responsible to his principal for the deficit should the market price be greater at delivery and the principal be cognizant of his rights. It is a broad road to fraud, and the doctrine that would build it is utterly destructive of the relation of trust and confidence between the producer and his factor. We do not believe that any custom can legalize it.

But if a custom long established and universally acquiesced in is sufficient to make a sale on a "basis" lawful, certain it is the court must be thoroughly satisfied that such has been the custom, fixed and acquiesced in for a long series of years. This is necessary to make any custom a law.

(Counsel discussed the testimony, insisting that such a custom was not shown to be general.)

MOORE, ASSOCIATE JUSTICE.—The leading question which has been discussed by counsel in this case has been decided by the court in the case of Harbert v. Neill Bros. & Co. As will be seen by the opinion pronounced in that case, the court holds that the transaction between appellants and A. Sessums, Powell & Co., by virtue of which appellants claim the cotton

in controversy in this suit, was not made or consummated in accordance with the custom and usage observed by factors in the Galveston market, in disposing of cotton consigned to them for sale. It follows, as an inevitable deduction, that appellee's property in the cotton was not divested by its unwarranted transfer. Although appellants may have paid said factors the full value of the cotton, and supposed its transfer by the delivery order of said factors gave them an absolute and indefeasible title, evidently they acquired no right by this illegal and unauthorized transfer and delivery, which they can assert against appellee.

The view taken by the court of this branch of the case, obviates the necessity of a reversal of the judgment, because of the error into which the court inadvertently fell in overruling appellants' objection to the testimony of the witness Timmons, that it was the general habit or usage with A. Sessums, Powell & Co. to close all sales of cotton made by them within the period of ten days from date of sale; and that the witness believed the transaction out of which this controversy grew was not a sale, but an hypothecation of the cotton. Unless the rules adopted by A. Sessums, Powell & Co. for conducting their business were known to appellants, unquestionably they were not bound or affected by them. Looking at the other testimony before the jury, it is apparent that this evidence occasioned no injury to appellants; because the sale was not of a character which the factors were authorized to make for their consignors, and, also, because the evidence merely shows that it was the habit of these factors to conduct their business in conformity with the general usage of the market; and whatever may have been the particular rules adopted by them for transacting business, unless they were sanctioned by appellee if more liberal than those warranted by general usage, or were known to appellants if more restricted, they were immaterial, and could in no way affect the result of the case; and as, in the opinion of the court, the transaction between appellants and the factors, A. Sessums,

Powell & Co., when viewed in the most favorable light possible for appellants, will not support their claim to the cotton, the error in admitting the witness to state, that in his opinion the delivery of the cotton was an hypothecation, is likewise wholly immaterial, and certainly could do them no injury.

There is, however, an error in the judgment, for which it must be reversed. The court instructed the jury, if they found for the plaintiff, (the appellee in this court,) to show by their verdict the value of the cotton at the date of their verdict, and also at the time the claim bond was given by the claimants (the appellants).

The verdict does not conform to the instruction, or properly respond to the issues submitted. We here quote it: "We, the jury, find the value of the cotton in question to be at this time one thousand and seventy-one $\frac{35}{100}$ ($1,071.35); and find for the plaintiff judgment in the sum of eleven hundred and eighty $\frac{5}{100}$ ($1,180.05), with interest from 17th July, 1873, to date, (13 months and 7 days,) $104.22; total, $1,284.27 (twelve hundred and eighty-four $\frac{27}{100}$ dollars.) Galveston, March 26, 1874."

Upon this verdict, the court gave judgment for appellee against the claimants for the cotton, "together," as reads the judgment, "with (10) ten per cent. damages upon the assessed value thereof, as found by the jury aforesaid, to wit, the sum of one hundred and eighteen dollars, and all costs in and about this case incurred, and that execution issue as well against the sureties on said claimant's claim bond, to wit, Charles E. Richards and Thomas K. Hawkins, for the amount of said damage and cost, as against said claimants; and if said claimants shall fail or refuse to return said cotton to the plaintiff within ten days from the date of the rendition of this judgment, that the plaintiff, James B. Billingsley, shall have and recover of and from the said claimants, Charles M. Todd and Henry M. Neill, and the sureties on their bond, to wit, Charles E. Richards and Thomas K. Hawkins, the sum of one thousand two hundred and eighty-four dollars and twenty-

seven cents, with interest thereon from the date hereof, at the rate of eight per cent. per annum, together with ten per cent. damages as aforesaid, to wit, the sum of one hundred and eighteen dollars, and all costs in and about this cause incurred, for which execution may issue."

Evidently, the verdict, however intended by the jury or understood by the court, was not responsive to the charge. We are not warranted in saying, because the jury say they "find for the plaintiff judgment for $1,180.05," that this was the value of the cotton at the date of the claim bond. Neither the issues in the case nor the charge of the court called for a finding of this kind; yet it is only by inference from it that we can say that the jury found that the claimants failed to establish a right to the cotton claimed by them. Evidently the right to the property and its value are the only matters for the determination of the jury. The amount to which the plaintiff is entitled, if the property is not surrendered by the claimants, is fixed by the statute, and is not a matter for the consideration of the jury, except indirectly, in ascertaining and determining the value of the property.

We are not called upon, in this case, to say whether the value of the property should have been ascertained by the jury at the date of the verdict, or at the date of the claim bond, or between these dates. Nor is it necessary for us to inquire whether the evidence before the jury was sufficient to enable them to fix its value at either of these dates. If, however, it was deemed essential by the court that the value of the cotton should be ascertained by the verdict at the date of the claim bond as well as at the time of trial, the verdict returned by the jury should not have been received, but the case should have been recommitted to them, that they might return a verdict in proper form upon the issues submitted to them. This course was not taken, because the court probably regarded the second clause of the verdict, as intended by the jury, as a finding of the value of the cotton at the date of the claim bond. But we cannot so view it. It may possibly

have been the purpose and intention of the jury; but if so, the language of the verdict does not express their intention. The court must take the plain language of the verdict, and not mere inference or supposition as to the meaning of the jury, as its guide in pronouncing its judgment upon the verdict.

The judgment rendered by the court neither follows the verdict nor conforms strictly to the statute. The value of the cotton, as found by the jury at the date of the judgment, is $1,071.35; yet judgment is given for ten per cent. damages, not on this amount, but on $1,180.05, which, as has been said, we are not warranted in saying was the value of the cotton at any period whatever. Nor is the judgment against the sureties in the claim bond, for the costs of suit, warranted by the statute. (Paschal's Dig., art. 5314.)

It was unnecessary, and certainly is not within the contemplation of the statute regulating trials of the right of property, that the court should enter judgment and award execution such as is given plaintiff in the event of the failure of the claimant to surrender the property, as stipulated in the claim bond. If, however, the judgment as thus rendered conformed to the statute, appellants would have no just cause of complaint. At most, it would be mere surplusage, and could in no way injuriously affect them. But such is not the case. A second judgment is rendered against the sureties on the claim bond for costs, as well as said excessive damages. It also condemns the claimants to pay interest upon interest, while the statute merely requires the obligors to pay interest on the value of the property from the date of the bond. (Paschal's Dig., art. 5316.)

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.