THE FORT WORTH PUBLISHING COMPANY v. HITSON & REED ET AL.

No. 6069.

1. **Trial of Right of Property—Immaterial Issue.** — The property in controversy was levied upon under three writs of attachment. After the claimant had filed its claim bond the plaintiff in the attachments caused the sheriff to alter his return upon one of the writs so as to show that the property was seized as the property of the claimant, against whom the writs also ran. The claimant replevied and the property was condemned under the attachment. These facts were set up as an estoppel in behalf of the claimant. *Held*, that exceptions were properly sustained to the plea, as the issue was the ownership of the property at its seizure. This could not be affected by an indorsement on the writ subsequent to the levy. The claimant was not deceived or misled thereby. The facts also were irrelevant and when offered were properly excluded.

2. **Transfer of Property of a Corporation.**—A private corporation was largely indebted and was considered insolvent. A new corporation was formed by practically the same men. The new corporation assumed the indebtedness of the first; the stock of the old was transferred to the new company. The property itself was delivered by the manager to the new company with the knowledge and consent of the stockholders of the first but without any action by the board of directors. The property having been seized by creditors of the new corporation it was claimed by the first. *Held*, the facts showing the dealings of the two corporations, their directors, and stockholders were relevant, and that the facts were evidence of ownership by the defendant.

3. **Same.**—We can see no good reason why a corporation may not be bound by acts of acquiescence in a transaction which may be irregular on its face if not prohibited, or which may be in excess of the officer's power acting for the corporation.

4. **Agency — Acquiescence.** — When the principal, with the knowledge of the facts, acquiesces in acts done under an assumed agency, he should not subsequently be heard to impeach them upon the ground that they were done without authority. This applies also to corporations.

5. **Same.**—An express assent is not essential on the part of stockholders to operate as an equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized but not illegal act and to seek legal redress. See facts *held* evidencing acquiescence by stockholders in the acts of the manager in transferring by delivery the property of the corporation.

6. **Evidence to Acts of Private Corporation.** — The acts of a private corporation may be shown by other testimony than a record or minute of its proceedings unless the statute declares to the contrary. Its acts may be proved by direct evidence or be inferred from circumstances, *e. g.*, as to election or appointment of a director.

7. **Acquiescence—Evidence.**—All of the directors of the Fort Worth Publishing Company were stockholders in the "Investment Company, Limited," and except one were directors in the latter company. They were all present when the assets of the Investment Company, Limited, were being estimated with a view of the settlement of its debts. At this meeting the property in controversy was included by the parties as assets of the Investment Company at $75,000. A witness was allowed to detail the proceedings. *Held*, proper, in that the testimony showed an assertion or claim of right to the property by the Investment Company, Limited, the defendant in attachment, and to show acquiescence by the officers of the Publishing Company, the claimant in the adverse claim of ownership in the property.

8. **Amendment Allowed During Trial.**—In the tender of issues upon the trial of the right of property levied upon under several writs of attachment the amount claimed in one of the writs was stated to be $1076. The writ showed the amount to be $10,076. Objections being made to the writ when offered in evidence the court permitted the insertion of a cipher so as to make the plea correspond with the writ. No postponement was asked nor surprise shown, and no injury appearing this was no ground for reversal.

9. **Immaterial Testimony.**—The issue being whether the property had been conveyed and delivered by the claimant to the defendant in attachment, it was not error to exclude testimony showing that one of the plaintiffs in attachments levied had prosecuted to judgment an attachment against the property as belonging to claimant.

10. **Charges Given and Refused.**—There was evidence of a transfer and delivery of the property by the manager of the Publishing Company to the Investment Company, Limited, under circumstances showing the assent of the other stockholders, and their subsequent acquiescence in and ratification of the same. This phase of the case was fairly presented in the charge of the court. The refusal of instructions upon the relations of stockholders to the corporation and the regular mode of action by the directors in conveying property, etc., was immaterial.

11. **Sureties of Claim Bond Liable for Costs.**—Article 4827, Revised Statutes, prescribes the form of bond which shall be given by the claimant. The *costs* are expressly provided for therein. Prior thereto the statute was otherwise. Pasch. Dig., art. 5310.

12. **Judgment Entry in Trial of Right of Property.**—Under article 4843, Revised Statutes, as amended in 1887, it was error to render a joint judgment in favor of the plaintiffs in the attachments levied upon the property. The judgment should have established the rights and privileges of the several parties. The judgment also should have fixed the value of the use of the property in controversy.

### ON REHEARING.

13. **Practice—Attacking Writ.**—In trials of the right of property the purpose of the statute (arts. 4833, 4838, 4839, Rev. Stats.) was to secure a trial of the contest as to the right of property, and not of the validity of the writ. We think it was intended that the validity of the writ should not be questioned except by a special plea setting up the grounds upon which its invalidity is claimed. It is no ground for reversal that the writ of attachment which was not attacked by plea was not introduced in evidence.

14. **Sufficiency of Testimony.**—In absence of an assignment of error questioning the sufficiency of the verdict this court on appeal will not consider such question.

15. **Testimony to Facts Constituting an Estoppel.**—What was said and done at a meeting of persons who were stockholders and directors in the two corporations were circumstances legitimate to be proved as tending to show that there was an under-

standing among all parties that the new company (the defendant in attachment) was to pay the debts of the old Investment Company, including debts it had contracted for the claimant (the Publishing Company), and was to become the owner of its stock, which the old Investment Company claimed to own.

16. **Practice on Application for Rehearing.**—On motion for rehearing in this court it is only errors which may have been committed by the trial court, and which have been assigned, which will be considered. That the court in the opinion attacked may have misapprehended the record of itself is immaterial.

17. **Immaterial Error in Charge.**—An assumption of a controverted fact in the charge when by such assumption a proposition favorable to the complaining party is emphasized and made more prominent is no ground for reversal.

APPEAL from Tarrant. Tried below before Hon. J. A. Holland, Special District Judge.

The opinion gives a statement.

*Hogsett & Greene*, for appellants.—1. When a person has property seized by attachment as the property of A, and B claims the property, and then said person has said property seized by attachment as the property of B and condemned by judgment against B to satisfy a debt against him, such person is thereby estopped in an action for the trial of the right of property with B to set up that said property belonged to A and is liable to the attachment against A first levied.

2. In order to bind a corporation it must act through its board of directors or some officer authorized to bind it, and the acts of individuals who may be stockholders or officers of a corporation acting for and obligating themselves as individuals do not bind a corporation. Mora. Pri. Corp., secs. 231, 247.

A transfer of the whole of the stock of a corporation does not convey the property belonging to the corporation. Thomp. Stockholders, sec. 1, subdiv. 2; Button v. Hoffman, 61 Wis., 20; 3 Pome. Eq. Jur., sec. 1090.

3. A stockholder in a corporation has no title to the property of the corporation, but only a right to share in the profits of the concern. The property belongs to the corporation, and in a contest between a corporation and other persons for the trial of the right of property it is immaterial to whom its stock belongs, or did at any particular time belong, and evidence as to the ownership of the stock is irrelevant.

4. The minutes of the action of the board of directors are the best evidence of the appointments of officers.

5. One corporation is not bound by the acts or doings of another and separate corporation. Corporations act and are bound by and through their directors duly constituted. Thomp. Liability of Stockholders, sec. 1, subdiv. 2.

6. It is error to permit a material amendment after the trial has commenced. Rev. Stats., art. 1192.

7. (1) An estoppel to be available must be specially pleaded, and it is error for the court to charge on an issue not made by the pleadings.

(2) If a charge submits to the jury an hypothesis not warranted by the evidence, by which the jury may not improbably have been misled, the judgment should be reversed. Lee v. Hamilton, 12 Texas, 413; Earle v. Thomas, 14 Texas, 583; Andrews v. Smithwick, 20 Texas, 111; Dodd v. Arnold, 28 Texas, 100.

8. (1) The individual shareholders of a corporation have no authority as such to represent the company or dispose of its property. Mora. Pri. Corp., secs. 236, 356; Thomp. Liability of Stockholders, sec. 1, subdiv. 2.

(2) The business and property of a corporation are in the charge of and under the control of a board of directors, but such board are intrusted therewith for the purpose of carrying on the business, and have no authority to make important changes in the business, or to give away the property, nor to sell the property necessary for carrying on the enterprise except such sale be necessary for payment of debts. Mora. Pri. Corp., secs. 239, 240.

(3) The directors of a corporation in the transaction of business to bind it must act as a board, and acts by them separately as individuals disposing of the property of the corporation are not binding. Mora. Pri. Corp., sec. 247.

(4) A director or stockholder can not represent a corporation in disposing of its property to himself, or in a transaction where he is adversely interested. Mora. Pri. Corp., sec. 245.

(5) An agreement by directors and stockholders of a corporation with persons, themselves among others, who contemplate forming another corporation, to deliver up their stock to be canceled, and the property and effects of the former corporation to the contemplated corporation, is not binding on the former corporation as to the title of its property so to be delivered, and such an agreement does not affect the title. Said parties acting as individuals having no right or authority to dispose of the corporate property, and said agreement being neither a contract for the sale nor a gift, is wanting in consideration and in parties, the contemplated corporation not being then *in esse*, and a delivery of the stock and turning over of the property by said parties under such agreement to the new corporation after its organization would not divest the former corporation of its title to the property so turned over, or subject the property to the debts of the new corporation. Button v. Hoffman, 61 Wis., 20.

(6) A sale and delivery of the whole of the stock of a corporation by the owners of the stock to other persons, coupled with a delivery of the corporate property, does not constitute a sale of the corporate property or divest the corporation of its title thereto.

(7) It is error to charge on a supposed state of facts not developed by the testimony. Love v. Wyatt, 19 Texas, 312; Dodd v. Arnold, 28 Texas, 100; Railway v. Terry, 42 Texas, 451.

9. It is incumbent upon the plaintiff to plead and prove the writ by which he claims to subject the property. Rev. Stats., arts. 4834, 4842; Latham v. Selkirk, 11 Texas, 314.

10. Where several different parties have no joint interest, but whose claims are several and distinct, have executions or attachments levied upon personal property, and a person who is not a defendant in the writ makes affidavit and claims the property under the statute for the trial of the right of property, the court should direct issues made up between the claimant and each of the plaintiffs in the writ and try each case separately, and in any event, if this is not done, there should be a distinct verdict directed as between the claimant and each of the plaintiffs. Green v. Banks, 24 Texas, 508.

11. (1) A legal distribution of the property after a dissolution of a corporation and settlement of its affairs is the inception of any title of a stockholder to it, although he be the sole stockholder. Button v. Hoffman, 61 Wis., 20; Van Allen v. Assessors, 3 Wall., 584; 3 Pome. Eq. Jur., sec. 1090.

(2) If a person is the sole owner of the stock of a corporation, that does not vest the title of the property of such corporation in the stockholder or make it subject to be seized for his debts during the existence of the corporation; it is the stock that is the property of such person and liable to be seized for his debts. Rev. Stats., art. 2294; Button v. Hoffman, 61 Wis., 20; Hyatt v. Allen, 4 Corp. Cases, 624; Wilde v. Jenkins, 4 Paige, 481; 3 Pome. Eq. Jur., sec. 1090.

(3) The title of the corporate property, and the question of whether it is liable to be seized for the debts of the stockholder, does not depend upon whether the corporation is or is not indebted. The stockholder has no title legal or equitable in the corporate property during the existence of the corporation. 3 Pome. Eq. Jur., 1090.

(4) If a charge is erroneous, and it is not clear that the jury were not misled by it, the judgment should be reversed. Andrews v. Smithwick, 20 Texas, 111.

12. A court in charging the jury can not assume material facts as established which it is incumbent upon the party claiming the benefit of them to prove. Williams v. Davidson, 43 Texas, 38; Crozier v. Kirker, 4 Texas, 252.

The writ was material evidence and essential to plaintiffs' recovery. Rev. Stats., arts. 4829–4842; Latham v. Selkirk, 11 Texas, 314.

13. The judgment of the court must conform to the pleadings, and the court has no power or authority to render a joint judgment in favor of several persons whose pleadings and evidence show they have no

joint interest.   Rev. Stats., arts. 1335, 1336;  Green v. Banks, 24 Texas, 513;  Menard v. Sydnor, 29 Texas, 257.

14.  By the statute the court has no authority to render judgment against the sureties on a claim bond for costs.   Rev. Stats., arts. 4840, 4841;  Neill v. Billingsley, 49 Texas, 170.

*A. M. Carter,* for appellees.—1.  The court did not err in sustaining the demurrer of the bank to the claimant's special plea; the only matter to be tried was the right of appellant to the property claimed at the time the writs were levied on the property, and not matters subsequent to such levy or matters growing out of the levy.   Frieberg v. Elliott, 64 Texas, 367;  Livingston v. Smith, 5 Pet. U. S. Rep., 90.

2.  The fact that the appellant had given the claimant's bond did not place the property beyond a seizure for its own debt, nor was the bank estopped from seizing the same property as the property of claimant after having seized it as the property of the Texas Investment Company, Limited.

3.  The charter of the Texas Investment Company, Limited, and the agreement made between certain persons to form said company, and the transfer, called "big heap transfer," were properly admitted in evidence, and admitting them did not conclude any party or bind the claimant; this evidence was material to show the manner of dealing with the Texas Investment Company, Limited, by all of those persons who were at that time officers, stockholders, etc., of the Loving Publishing Company, now called the Fort Worth Publishing Company, as well as to explain the situation then of these companies toward the others.   Poll. Prin. of Con., Wald., 111–119.

4.  The court did not err in permitting the appellees to read to the jury the stock book of the Loving Publishing Company, as the whole of the stock that had been issued by the officers of that concern was in the book, pasted back, marked "canceled," etc.   It was material and proper to go before the jury as tending to show that that company ceased to have any separate existence or identity after the incorporation of the Texas Investment Company, Limited, and further in connection with other evidence as tending to show that the pretended publishing company was a simulated concern kept up for the convenience of the Texas Investment Company, Limited.

5.  It was perfectly legitimate to prove by parol the entire circumstances that brought about the arrangement between the old and new investment companies.

6.  If the Texas Investment Company, Limited, did own all of the stock of the Loving Publishing Company, then the said Texas Investment Company was the equitable owner of all the property of said concern, and appellants' charge was not correct.   It told the jury that if

the Texas Investment Company, Limited, owned all the stock, then the limited company did not have any title to such property.

7. In such cases as this—the trial of the right to property—the ordinary rules of pleading are dispensed with and the issues are made up under the directions of the court; the statute itself prescribes the matter to be set out in framing the issues, and the charge complained of was properly given. Rev. Stats., art. 4834; Field & Co. v. Fowler, 62 Texas, 68; Linn v. Wright, 18 Texas, 342; Mayer v. Ramsey, 46 Texas, 371.

8. If all the officers and stockholders of the Loving Publishing Company did agree with the gentlemen who signed the agreement to form the Texas Investment Company, Limited (called subscription list), that they would deliver up all their stock owned in the publishing company and the property and effects of the publishing company to the Texas Investment Company, Limited, and if this agreement was perfected and said investment company, limited, ever after managed and controlled the same, in person or by agents, with full knowledge upon the part of the officers of the publishing company, this would be a contract good and sufficient to vest title to such property in the Texas Investment Company, Limited, and when seized, as in this case, the Loving Publishing Company had no title to any such property that would support its claim to same. Swift v. Smith, 14 Am. and Eng. Corp. Cases, 111; McCandless' Appeal, 4 Am. Corp. Cases, 124.

HOBBY, PRESIDING JUDGE.—This action of the trial of the right of property grows out of the following proceedings: Appellees Hitson & Reed, a firm composed of Jesse Hitson and J. D. Reed, the National Bank of Jefferson, E. G. Thurmond, A. B. Smith, and T. P. Martin, who were plaintiffs in the lower court, caused attachments respectively in their favor to be levied in August, 1884, on the printing presses, type, engine, and other material used in a printing and publishing business, as the property of the Texas Investment Company, Limited. The writs levied aggregated the sum of about $26,241.

On the 24th of August, 1884, the appellant through its president, A. M. Britton, filed affidavit and claimant's bond under the statute claiming the property as belonging to the Fort Worth Publishing Company.

The cause was tried upon issues tendered on the one hand by the appellees (plaintiffs below), alleging in substance that the property at the time of the levy was subject thereto and was the property of the Texas Investment Company, Limited; and that the claim of the Fort Worth Publishing Company was fictitious and fraudulent, and made to hinder and delay creditors; that the Texas Investment Company, Limited, and claimant were one and the same, the latter having no distinct existence from that of the former. These issues were tendered separately by the several plaintiffs.

The claimant filed demurrers to the issues above tendered and a plea of estoppel as to the National Bank of Jefferson, and alleged that it was formerly known as the Loving Publishing Company, incorporated in April, 1883, and by its amended charter in June, 1884, its name was changed to the Fort Worth Publishing Company; that it was the owner of the property and in possession when levied on; that it had contracted several large debts, one to the City National Bank for $9000, and one to Snider & Holmes for $4500, and to other persons amounting to about $30,000; that the property was not worth over $10,000 and its rental value did not exceed $500 per annum.

Plaintiffs denied that the claimant was insolvent; and alleged that at date of the levy the subscription to its capital stock, which was $100,000, was not paid and was still unpaid, and could be collected.

The cause was tried at the same time between all the plaintiffs and the claimant in the lower court, the plaintiffs assuming the burden of proof. The result was the jury found a verdict in favor of plaintiffs, that the property was subject to the levy, and its value was estimated at $20,000.

Upon this verdict judgment was rendered by the court jointly in favor of all the plaintiffs against the claimant and A. M. Britton, J. H. Brown, H. C. Edrington, and Sidney Martin, sureties on the claimant's bond, for the sum of $25,462, which included the value of the property as found by the jury ($20,000) and $2000 damages and $3462 interest.

The claimant appeals.

The second assignment has reference to the court's ruling in sustaining the demurrer of the National Bank of Jefferson, one of the plaintiffs, to the claimant's special plea to said bank's issue tendered in the case.

This special plea set up that the bank had seized the property by virtue of three writs of attachment as the property of the Investment Company, Limited, one of which writs was issued against the claimant; that when the affidavit and bond were filed in this cause the bank caused the sheriff to change the return on the last writ and hold the property as that of the claimant; that the claimant replevied and the bank afterward prosecuted its claim to judgment, and was estopped from now claiming the property as that of the investment company, limited.

To this plea an exception by the bank was sustained, and this is assigned as error. We perceive no error in this ruling. The issue between the parties was as to the ownership of the property at the time of the levy, and this could not be affected by an indorsement on the writ subsequent thereto. There were none of the elements of an estoppel in this. The claimant was not deceived or misled thereby.

The most important question in the case is raised by the third, fourth, fifth, seventh, and eighth assignments, which may be considered prop-

erly in the same connection and which relates to the admission of evidence offered by the plaintiffs over the claimant's objections.

The bills of exceptions referred to under these assignments, and numbered from one to six, show that the plaintiffs below in support of their allegations that the property belonged to the Texas Investment Company, Limited, the defendant in the attachment suits, and was therefore subject to the levy, and the further averments that the Fort Worth Publishing Company was and is in fact the Texas Investment Company, Limited, and that its name of the Fort Worth Publishing Company is but another name for the former company, and that its claim is colorable and made to delay creditors, etc., introduced in evidence the following:

The charter of the Texas Investment Company, Limited, and a written agreement between certain persons to form said company, and a transfer called "big heap transfer," it being a written conveyance of a large amount of property by the Texas Investment Company to the Texas Investment Company, Limited, the defendant in attachment.

The charter was filed in the office of the Secretary of State on November 10, 1883, and was subscribed by J. D. Reed, Sidney Martin, George Loving, W. J. Boaz, J. P. Smith, J. F. Evans, and W. J. Morphy. A capital stock of $100,000 was provided for by it, and it was incorporated for general business purposes, but none of them specified a publishing business. The agreement referred to was signed by the parties above named and others. It provided for the amount of stock each subscriber would take in the company. It further provided that "the subscribers hereto, upon such payments being made, shall be entitled to receive and have issued to them the stock of this company at par to the amount of this subscription; and further, upon such payment being made as aforesaid, and as a part of the consideration of this agreement and for such payment, each subscriber shall be entitled to receive and there shall be transferred or issued to them stock of the Loving Publishing Company at par to the amount of his said subscription; and it is further agreed that no organization of said proposed corporation shall be had until subscriptions to the full amount of $100,000 shall have been obtained hereto."

The transfer termed the "big heap transfer" consisted of a resolution of the board of directors of the Texas Investment Company, Limited, dated November 28, 1883, reciting that said company assumed the following debts of the Texas Investment Company; among which was a debt of the Loving Publishing Company for $5600.12, and a debt due Fore, Morphy & Henderson of $80,000, evidenced by nine notes described therein; and provided that a conveyance to the investment company, limited, be made by the old investment company. This is followed by a conveyance from the latter to the former company of certain property, including one thousand shares of capital stock in the publish-

ing company. The property in controversy is not named in the conveyance.

The plaintiffs introduced the stock book of the publishing company for the purpose of showing who owned the same. It appears from this book that certificates from Nos. 1 to 10 for about five hundred shares were returned, pasted back in the book, and the word "canceled" written across the face of each. Nos. 10 and 11 were accounted for by an affidavit of their loss by George B. Loving, to whom they were issued. The remaining certificates seem to have been marked "erroneously issued," or "canceled." The certificates which were by order of the investment company, limited, to be issued to five of its members to qualify them as directors of the publishing company were in the book. Neither they nor the nine hundred and ninety-five shares which were to be issued to the investment company, limited, were delivered. One share issued to A. M. Britton was not accounted for.

With reference to this stock W. L. Malone testified that he was a stockholder in the publishing company by courtesy. He received the stock from Loving, and gave it up when asked for it. Knew of no money having been paid for stock except some paid by Paddock.

Paddock testified that he was an original stockholder in the publishing company. He conveyed his stock to Loving, who paid him for it between $3500 and $5700. This was the purchase price. A part of this was paid by Loving. The Texas Investment Company, Limited, paid him $2000 for his interest in the publishing company. He did not know of any money being paid for stock in that company. It was a transfer from one company to another—a change of name. He stated that Loving and himself owned nearly all the stock in the investment company (old). "A few shares were probably held by others to make the corporation intact. Mr. A. may have owned a few shares, but we owned it all at that time." It was in August, 1883, when he sold to Loving.

In connection with the documentary testimony introduced by plaintiffs over the claimant's objections, it appears that the following was also objected to:

Plaintiffs' counsel asked the witness J. P. Smith the following: "Tell the circumstances that brought about the arrangement between the new and old investment companies."

In response to this the witness stated substantially that he was vice president and one of the directors of the investment company, limited. Mr. Britton, the claimant, was appointed by that company a director in the publishing company (claimant company). Loving, who was an officer and director in both companies, who had established the papers —the property in controversy—and who with Paddock seemed to own the stock in the publishing company, was president of the Texas Investment Company (old). This company owed Fore, Morphy & Hen-

derson $80,000, which Loving and the directors of the publishing company admitted had been expended on the property in suit.

These statements were made at a meeting of those constituting the stockholders and officers of the two companies by Loving, the manager of the publishing company, to all the parties who signed the agreement to form the investment company, limited, and who were also stockholders and officers of said companies. He (Loving) stated at this meeting that the papers must suspend or be sold out to pay debts unless a new company could be organized with money sufficient to run them.

The agreement before mentioned was then executed; and subsequently the charter of the investment company, limited, was obtained under the agreement with Loving and the old investment company that all of its property should be conveyed to the investment company, limited. The capital stock was to be $100,000, and the subscribers were to receive an amount of stock in this publishing company. Loving showed us that the stock of the publishing company had all been transferred and was canceled and belonged to the old investment company. The charter of the investment company, limited, was then prepared and sent on, and on its return the directors named in it held a meeting and organized, and then it was that the transfer of the property was made to the investment company, limited, by the secretary or president of the old company. The stock of the publishing company was never distributed. The investment company, limited, when we organized, declined to issue the stock of the publishing company to the stockholders, and the stock was held by the former. Loving, who seemed to be the manager of the publishing company, delivered the property to the Texas Investment Company, Limited. I talked with all that I knew of who had been stockholders-in the publishing company and they assented to Loving's action. He had founded the paper. Immediately after the incorporation of the Texas Investment Company, Limited, in November, 1883, that company took charge of the property. When it assumed control of the paper it ran behind every month. On December 28, 1883, at a meeting of the directors of the investment company, limited, on motion of A. M. Britton the paper was enlarged to a seven column paper and other improvements made, and W. L. Malone was elected general manager in the absence of Loving, who had been placed in that position by the investment company, limited, but who had gone to Europe.

One share of the stock of the publishing company was issued to each of five directors, to-wit, A. M. Britton, W. J. Morphy, J. H. Brown, Sidney Martin, and Geo. Loving, and the remaining stock of the publishing company was retained as assets of the investment company, limited. These directors had no stock prior to this, but they had been selected as directors by the investment company. About $20,000 was expended by this company on the property. The property was in the same building with the investment company, limited, and the employes were

paid by that company. The witness stated that he did not see the necessity for a separate board of directors. The financial condition just before its failure, of the investment company, limited, was discussed by its officers. Some of the officers of the publishing company were present when a report of the assets of the investment company, .limited, was made, and the property in controversy was estimated at about $75,000.

It is claimed by the Fort Worth Publishing Company in effect that the proof showed that the property belonged to the Loving Publishing Company before the existence of the Texas Investment Company, Limited, and having belonged to such publishing company, afterward the Fort Worth Publishing Company, there was no evidence to show that the title to said property had passed out of the latter company. It is insisted that the evidence admitted did not tend to establish that fact. It was objected to, therefore, because it was irrelevant, and because subscribers to a new company could not by signing any instrument bind a corporation then in existence, and it was not shown that the parties signing the agreement had anything to do with the defendant company.

It is contended by appellant that the transfer of the entire stock of a corporation does not convey its property, and that to bind the company it must act through its officers or board of directors authorized to bind it; that the act of individuals who may be stockholders or officers acting for themselves does not bind the company.

The object of the evidence was to show that the Loving Publishing Company, subsequently the Fort Worth Publishing Company, the claimant in this case, was largely in debt to the old Texas Investment Company. About $80,000 of the latter company's money had been used by it in maintaining the paper, the property involved; that at a meeting of the stockholders and officers of the two companies, who were generally the same, Loving, the manager of the publishing company, represented the necessity for the organization of a new company to prevent the suspension of the publishing company. The new company (the defendant in attachment the Texas Investment Company, Limited) was created, assuming this debt due from the publishing company to the old investment company and a debt also of $5600 which the publishing company owed. The stock of the publishing company was also transferred to the investment company, limited. In consideration of this the property of the old investment company and that of the publishing company—the property in controversy—was transferred to the Texas Investment Company, Limited.

The evidence further shows that Loving, the manager of the publishing company, delivered the property to the defendant in attachment with the assent of the stockholders in the former company. After the delivery of the property it seems to have been controlled exclusively by the investment company, limited.

It does not appear from the proof that any shareholder or officer in the publishing company dissented from the action of Loving, the manager. As far as we can determine from the record it was assented to by all and done with their knowledge.

Conceding that there was no formal transfer of the property under the corporate seal, the case then calls for the application of principles independent of contracts of sale; and under the application of such rules we can see no good reason why a corporation may not be bound by acts of acquiescence in a transaction which may be irregular on its face, if not prohibited, or which may be in excess of the officer's power acting for the corporation.

In this case there was a transfer and delivery of the property to the defendant in attachment by Loving, the manager of the publishing company, and the stockholders collectively. This may have been in excess of their power. The act, however, was not illegal and they believed they had the authority. The investment company, limited, received the property, expended money on it, managed it, and it is to be presumed was preparing, in the conduct of its business, to liquidate the indebtedness of the claimant company and the old investment company which it had assumed in the manner before explained.

The stock of the claimant company seems to have been owned entirely by the defendant in attachment and was under its control, as well as the property. A sufficient amount of it was issued to "keep the corporation intact." All of this was assented to and known by the directors of the claimant company. When the investment company, limited, was through its officers considering its financial status, the officers of the claimant company acquiesced in the estimate by the former of the property in controversy as an asset of the investment company, limited, at a valuation of from $69,000 to $75,000. These acts were capable of ratification by the officers of the claimant company, and could not be subsequently avoided by the company to defeat the creditors in this case of the Texas Investment Company, Limited.

It is a reasonable and "salutary rule" in its application to agencies that when the principal, with the knowledge of the facts, acquiesces in the acts done under an assumed agency he should not be heard subsequently to impeach them upon the ground that they were done without authority. Kelsey v. Bank, 69 Pa. St., 430. This rule applies to corporations as well as to individuals.

An express assent, it is said, is not essential on the part of the stockholders to operate as an equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized, although not illegal, act and to seek judicial redress. Shelden H. Co. v. Eickmeyer H. B. M. Co., 90 N. Y., 614.

We do not think there was error in admitting the evidence objected to by the claimant. The agreement entered into to form the Texas In-

vestment Company, Limited, and the subscription list to take stock therein, the charter of that company, and the resolutions adopted by it subsequent to its organization in execution of the agreement, and the transfer by the old investment company to the Texas Investment Company, Limited, as also the stock book of the Loving Publishing Company, in connection with the testimony of the witness J. P. Smith, were admissible to "explain the situation and relation of the parties, their business connections, and the circumstances" under which the conveyance of the property to the Texas Investment Company, Limited, was made. Abbott Tr. Ev., 726–739. The evidence was certainly relevant. That it did not show an absolute and direct conveyance under the corporate seal from the publishing company to the Texas Investment Company, Limited, did not affect its competency.

The acts of a private corporation may be shown by other testimony than a record or minute of its proceedings, unless the statute declares to the contrary. Its acts may be proved by direct evidence or inferred from circumstances. Abbott Tr. Ev., 35.

The eighth assignment is that the court erred in permitting the witness J. P. Smith to testify that the property in controversy was estimated as an asset of the investment company, limited, and as such valued at $75,000. It seems that all of the directors of the publishing company were stockholders in the investment company, limited, and except one were directors in the latter company. They were all present when the assets of the investment company, limited, were being estimated with a view to the settlement of its debts, and this property was included by them as assets of the investment company at the valuation above stated. We think this was clearly admissible to show an assertion or claim of right to the property by the defendant in attachment, and to show an acquiescence by the officers of the claimant company in the claim of ownership by the investment company.

The ninth error assigned is that the court permitted a material amendment after the trial was commenced.

The bill of exceptions shows that plaintiffs proposed to read in evidence the writ of attachment in the case of The National Bank of Jefferson v. The Texas Investment Company, Limited, No. 2932. This was objected to because the writ showed the amount to be $10,076, and the tender of issues by plaintiffs showed it to be for the sum of $1076. The plaintiffs then obtained leave to amend the plea by inserting a cipher so as to make the plea correspond with the writ. Claimant objected.

It is not shown that this resulted in a surprise prejudicial to the claimant. No continuance or postponement was requested on the ground that this necessitated other evidence in the claimant's behalf.

In view of the verdict in this case finding that the property belonged to the investment company, limited, we do not see that the rights of the claimant could be impaired or affected by an amendment of that·

character.   The contention between the parties was as to the title to the property or its ownership at the time of the levy.   And the claimant would not have been aided in establishing its title whether the plea described the writ levied as $10,076 or $1076.

The eleventh assignment is that the court erred in refusing to permit the claimant to prove that the National Bank of Jefferson had obtained a judgment against the claimant for $2900, which foreclosed an attachment lien on the property in controversy as the property of claimant.

It is not made to appear what effect this evidence would probably have had if admitted.   If the property had been levied on as the claimant's prior to the transfer to the Texas Investment Company, Limited, it would not have been inconsistent with plaintiffs' assertion that at the time of the levy of the writs in this cause it belonged to the defendant in attachment.   The issue was whether the property had been conveyed and delivered by the claimant company to the investment company, limited.

The twelfth assignment of error is that the court erred in refusing to instruct the jury to the effect that the claimant the Fort Worth Publishing Company was at and prior to the levy a legal corporation capable of owning the property; and that it devolved on plaintiffs to show that it parted with title to said property and conveyed it to the investment company, limited, before the attachments; and further, that the fact that the investment company owned all of the stock of the claimant company under either of its names would not vest the title to the property in the former company.

That portion of the charge construing the charters of the companies was in effect given by the court, as we shall see.   The remaining part of the instruction will be noticed under other assignments.

The thirteenth assignment is that the court erred in refusing to give special charge No. 2 asked by claimant.   Said charge was as follows: "The jury are instructed that if a person or corporation should own any part or all the stock of a corporation that being the owner of such stock does not vest the title to any of the property of the corporation in the person or corporation owning such stock, but that the title to such property is in the corporation whose stock is so owned and liable for the debts of such corporation.   If you should believe from the evidence that the Texas Investment Company, Limited, in fact owned any part or all of the stock of the Fort Worth Publishing Company, formerly known as the Loving Publishing Company, at the time of the levies of the respective attachments introduced by plaintiffs, but that the property so levied upon and in controversy in this suit was the assets of the said Fort Worth Publishing Company, and that the latter company at said time was indebted, you are instructed that said property was not liable to the levy, and you will find for the claimant."

This assignment will·be considered in connection with the special instruction referred to in the sixteenth assignment, together with the general charge of the court, so that the questions raised under all of the assignments attacking the charge may be disposed of together.

The sixteenth assignment is as follows: The court erred in modifying charge No. 5 asked by claimant and giving the said modifications to the jury, because said modifications are not correct as principles of law, were not authorized by any of the pleadings nor by the evidence, and were calculated to confuse and mislead the jury.

Said charge No. 5 was as follows: "The property of a corporation can not by the acts of any or all of its stockholders acting as individuals be sold or conveyed to any one. Such property can only be conveyed by the corporation itself acting through its board of officers when duly constituted as such board and acting in such capacity. Therefore, if you believe from the evidence that the property here in question was at any time prior to the levy of plaintiffs' attachment writs the property of the Fort Worth Publishing Company, then before the title to said property could pass to the Texas Investment Company, Limited, or be subject to levy of attachment for its debts, it must be shown that the title to said property was conveyed out of itself by said Fort Worth Publishing Company, as above indicated to you, or that the title passed out of said publishing company by operation of law and passed into said Texas Investment Company, Limited."

The modification added by the court was as follows:

"The above instruction is given with the following modification: If in fact all the officers and all the stockholders of a corporation meet together and authorize any one to make conveyance of the corporate property, and such conveyance is afterward made, and said property with the knowledge and consent of all said officers and stockholders is delivered to the purchaser, and none of said officers or stockholders object, but all acquiesce in such delivery; then if while said property is in the hands of the purchaser the same is attached as such purchaser's property, neither such company nor any of its officers or stockholders can then be heard to say that it belongs to such company."

The general charge of the court in substance was that the charters in evidence showed the separate existence of the two companies, the publishing company and the Texas Investment Company, Limited. The jury were told that "the transfer from the Loving Publishing Company to the Texas Investment Company and from the Texas Investment Company to the Texas Investment Company, Limited, are sufficient to show that all the stock of the claimant company belonged to the Texas Investment Company, Limited, at the time the attachment writs were levied; but in this connection you are charged that although the Texas Investment Company, Limited, may have owned all said stock, yet the title to the property in question would not for that reason be

in the Texas Investment Company, Limited, but would remain in the Fort Worth Publishing Company in trust for the use of said Texas Investment Company, Limited, subject only to its claim upon the settlement of the debts of said Fort Worth Publishing Company, if any it owed.

"If you believe from the evidence, however, that the Fort Worth Publishing Company at any time before the levy of the writs of attachment, acting as a corporation, did in fact sell and deliver to the Texas Investment Company or to the Texas Investment Company, Limited, the identical property in question as contradistinguished from its stock, and that at the time of the levy of said writs said property was then the property of the Texas Investment Company, Limited, you will find for plaintiff."

At the plaintiff's request the court gave the following special charge:

"If you believe from the evidence that the officers and stockholders of the Fort Worth Publishing Company did agree with certain gentlemen named in an agreement in evidence before you of date —— that they would deliver up to be canceled all stock owned in said publishing company and the property and effects of said publishing company to the Texas Investment Company, Limited, and in pursuance to said agreement did deliver up said stock and turn over said property and effects to said investment company, limited, and that said investment company, limited, managed and controlled the same through its agent appointed by it ever after, and that all this was known and acquiesced in by the Fort Worth Publishing Company as a corporation, then you will find for the plaintiff."

We do not deem it necessary, under the facts in this case, to consider the question as to what effect the transfer of the entire stock of the publishing company to the investment company, limited, would have with respect to vesting the title in the assignees to the property of the publishing company. The title to the property in this case is not made to depend on that. There is evidence of a transfer and delivery of the property by the manager of the publishing company to the investment company under circumstances showing the assent of the other stockholders and their subsequent acquiescence in and ratifying of the same, which, as we have seen, would as effectively vest the title to the property in the case of a corporation as in that of an individual. This phase of the case is fairly and fully presented in the charge of the court, and we think the assignments assailing the charge and complaining of the refusal to give other requested instructions are not well taken.

The twenty-first assignment is that the court erred in that part of the general charge given to the jury, as follows: "Although the Texas Investment Company, Limited, may have owned all said stock (meaning the stock of the claimant company), yet the title to the property in question would not for that reason be in the Texas Investment Com-

pany, Limited, but would remain in the Fort Worth Publishing Company in trust for the use of the Texas Investment Company, Limited, subject to its claims only upon the settlement of the debts of the Fort Worth Publishing Company, if any it owed."

The material part of this instruction had been requested in the charge referred to under the thirteenth assignment. If by this the court meant that the equitable title to the property would be in the investment company, it is supported by high authority. Swift v. Smith, 14 Am. and Eng. Corp. Cases, 115. If such title was held by the investment company the property would certainly be subject to its claims. This charge can not be justly complained of by the appellant; and if it be admitted that it was error, it did not we think form the basis for the verdict.

The twenty-sixth assignment is to the effect that the court erred in rendering judgment against the sureties for costs. In support of this we are cited to the case of Neill v. Billingsley, 49 Texas, 170. When that case was decided the statute which provided what character of bond should be given by the claimant and his sureties, did not require them to pay the costs. Pasch. Dig., art. 6310. It provided substantially for a bond for the return of the property and that the claimant shall pay "all damages that may be awarded against him," etc. Article 4827 of the Revised Statutes prescribes the form of bond which shall be given. The "costs" are expressly provided for therein. See also Wrought Iron Range Co. v. Brooke, 2 Ct. App. C. C., sec. 229.

The twenty-eighth assignment, raising the objection to the verdict on the ground that it is without evidence to support it as to T. P. Martin, becomes unimportant, because there was no issue raised or made by the claimant as to the amount of his claim, nor was his claim controverted.

The judgment in the case should not have been a joint one in behalf of the plaintiffs. It should have established the rights and priorities of the several plaintiffs in accordance with article 4843 of the Revised Statutes now in force, which is but declaratory of what the law and proper practice was. Elser v. Graber, 69 Texas, 224. It should also have fixed the value of the use of the property in controversy.

We think, therefore, that the judgment should be reversed and the cause remanded with instructions to the court to ascertain and establish the rights of the several plaintiffs under the writs levied in behalf of each respectively as provided by the above named article; and that the court also determine the value of the use of the property at the time of the rendition of such, to enable the claimant, if he should wish to return the property in satisfaction of the judgment, as provided by article 4845, to know what amount he is required to pay for the use of such property up to the date of the judgment.

We think for the purposes indicated the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 2, 1890.

Motion for rehearing by appellant. It was transferred to Galveston.

*Hogsett & Greene,* and *Watts, Aldredge & Eckford,* for motion.

*A. M. Carter,* resisting.

### ON REHEARING.

GAINES, ASSOCIATE JUSTICE.—A very careful consideration of the motion for a rehearing and examination of the record in this case have led us to the determination that while the former opinion may be inaccurate as to some of its statements as to the facts shown by the record, the conclusions therein announced are substantially correct, and that the disposition of the case heretofore made in this court is proper.

The business of the court does not admit of any discussion at length of the points raised in this motion; nor do we see that such a discussion would serve any useful purpose. We must content ourselves with a few brief remarks upon the several grounds upon which the application for a rehearing is based. We will dispose of them in the order in which they were presented.

First. It is insisted that because T. P. Martin, one of the plaintiffs, failed to introduce any evidence of his writ of attachment the judgment should be reversed. The authority relied upon in support of this contention is Latham v. Selkirk, 11 Texas, 314. That was a case of a trial of a right of property in certain chattels levied upon by virtue of an execution, and the point decided was that it was not error to refuse an instruction to the effect that the plaintiff in execution was not entitled to a verdict because he had failed to introduce in evidence the judgment upon which the writ issued. In the opinion it is said that in cases of that character the plaintiff should introduce in evidence his writ. This dictum we have no disposition to gainsay, but we think the proposition subject to the qualification that before the plaintiff can be required to produce his writ its existence or validity should be put in issue by a special plea interposed for that purpose. Our statute provides that a trial of this character shall be upon issues made up under the direction of the court. Rev. Stats., art. 4833. It is also provided that if the property be taken from the possession of the claimant the burden shall be upon the plaintiff, but that if it be taken from the possession of the defendant in the writ the burden of proof shall be upon the claimant. Rev. Stats., arts. 4838, 4839. These provisions indicate that the

Legislature contemplated that the trial should be what the name of the proceeding imports—that is to say, a trial of the right of property, and that the validity of the plaintiff's writ was not to be contested except by a special plea pointing out the grounds relied upon for showing its invalidity. If the plaintiff had to prove his writ in every case in which the defendant pleaded a general denial, logically the burden of proof would be upon him in every such case. Evidently the purpose of the statute was to secure a trial of the contest as to the right of property and not of the validity of the writ, and we think it was intended that the validity of the writ should not be questioned except by a special plea setting up the grounds upon which its invalidity is claimed.

The second ground of the motion is based upon the supposed error insisted upon as the first ground; and since we found no error pointed out in the first it follows that the second is untenable.

The third ground insisted upon in the motion is in brief "that the court erred in affirming virtually the judgment upon the main issue in the case, to-wit, the right to the property," etc. The question here submitted calls for a review by this court of all the evidence in the case, and a determination of the controversy upon the merits, and that too without any proper assignment of error in the brief to justify such a consideration. The only assignment of error which questions the sufficiency of the evidence to support the verdict is the twenty-sixth, and that is manifestly too general to admit of consideration under the rule as applied in repeated decisions of this court.

We think there was no error in admitting the testimony of J. P. Smith, as is insisted on in the fourth ground of the motion. There was testimony tending to show that the Texas Investment Company, Limited, was organized for the purpose of acquiring and publishing the newspapers which had belonged to the Loving Publishing Company. In the meeting at which the Texas Investment Company, Limited, was organized, many of the former stockholders and officers of the publishing company were present. Smith testified that Loving seemed to be acting as owner and manager of the property. What was said and done at that meeting we think were circumstances legitimate to be proved, as tending to show that there was an understanding among all parties that the new company was to pay the debts of the old investment company, including debts it had contracted for the publishing company, and was to become the owner of the stock of the publishing company, which the old investment company claimed to own.

If it be true, as claimed in appellants' fifth ground of their motion, that the court in its opinion "misapprehended the record and was led into error in assuming that the stock of the publishing company was assets of the investment company," this shows no sufficient reason for granting a rehearing. It is only errors which may have been committed by the trial court and which have been assigned in appellants'

brief which concern us in disposing of this motion. We think, however, it may be said that the evidence leaves very little doubt that the entire stock of the publishing company belonged to the investment company.

It is true, as claimed by appellants in the sixth ground of their motion, that the court assumed in its charge that the Texas Investment Company, Limited, was the owner of the stock of the publishing company, and that this assumption was not warranted by the evidence. There was some conflict, or at least uncertainty, as to the point. But the fact was assumed as introductory to an instruction to the effect that although this was a fact yet the plaintiffs were not entitled to recover unless it had been proved that the property in controversy had also been transferred by the publishing company to the investment company. The assumption only made the instruction more prominent and pronounced, and the instruction itself being favorable to appellants we do not see that they were prejudiced by the error.

The last ground of the motion is "that the verdict of the jury is manifestly against the preponderance of the evidence as to the title to the property." As has already been said, the only assignment of error which calls in question the sufficiency of the evidence to support the verdict is too general to be considered.

The motion for a rehearing is overruled.

*Motion refused.*

Delivered March 13, 1891.

Mr. Justice Henry not sitting.