E. D. STEGER ET AL. V. W. Y. DAVIS ET AL.

No. 412.

**Corporation—By-Laws—Ultra Vires—Ratification—Estoppel—Executed Contract.**—The directors of a corporation chartered for the purpose of establishing and maintaining a hotel, by resolution purchased a competing hotel property and issued stock in payment therefor. In a suit by stockholders to cancel the stock so issued, *Held:*

1. The purchase of the property was within the legitimate scope of the corporate powers, and because the hotel was afterwards built upon a different lot, it is not to be concluded that the corporation or its stockholders could for that reason repudiate the trade as ultra vires.

2. The fact that at the time of the purchase of the competing hotel property the corporation had not adopted by-laws, would not render the act void.

3. The contract of purchase being within the corporate powers, and not being mala in se or mala prohibita, or against public policy, and having been freely executed in good faith by both parties with the full knowledge and acquiescence of appellants, the complaining stockholders, who have accepted the benefits of the trade, can not be heard to set it aside.

4. An express assent is not essential on the part of stockholders to operate as an equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized, although not illegal, act, and to seek judicial redress.

APPEAL from Fannin. Tried below before Hon. E. D. MCCLELLAN.

*Steger & Steger* and *Richard B. Semple,* for appellant L. C. Wilson.— The directors of the Bonham Hotel Company had no power to issue stock to defendants in payment of the Crockett House premises, for the reason that they at that date had not adopted any by-laws, without which they had no authority to issue stock, and they were prohibited by statutes from disposing of stock for the purchase of premises which the corporation could not hold after such purchase, and as defendants knew these facts, there could not be an estoppel arising from the depreciation of the property after the trade. Rev. Stats., arts. 575, 585, 586, 589, 591; Orynski v. Loustaunau, 15 S. W. Rep., 674; Fitzhugh v. Land Co., 81 Texas, 307; Railway v. Railway, 68 Texas, 170; Railway v. The State, 75 Texas, 435; Railway v. Morris, 67 Texas, 692; Anderson v. B. and L. Assn., 4 Ct. App. C. C., sec. 174; 2 Mora. on Corp., secs. 605–607; 1 Beach on Corp., sec. 383.

As the purpose of the charter of the association was to establish and maintain only one hotel, which was the Hotel Alexander, the capital stock, which was fixed by said charter at $40,000, could only be used in building and maintaining said Hotel Alexander, and when $6500 of stock was issued to defendants W. Y. Davis and R. A. Davis,

in payment of said Crockett House premises, the same was illegally issued, and as there was no fraudulent misrepresentation made by any party to induce said defendants to enter into the trade, and the authority of the directors to make the trade was well known to said defendants, there could be no estoppel against plaintiffs to prevent them from having said stock so illegally issued cancelled by said court. Scoby v. Sweatt, 28 Texas, 713; Page v. Arnim, 29 Texas, 53.

*Taylor, Galloway & McGrady*, for appellees.—The issue of stock by the directors of a corporation for a valuable consideration paid, not in excess of the authorized capital, though irregularly issued, will not be cancelled on account of such irregularity. Bond v. Mfg. Co., 82 Texas, 309; Railway v. Gentry, 69 Texas, 625; Cook on Stock and Stockholders, 2 ed., sec. 52; 91 U. S., 45, 56; 90 N. Y., 353; Taylor on Corp., 2 ed., secs. 589, 590, and notes.

Under an executed contract, where the corporation has received value and the stockholders made no objections and participated in the profits under the contract, they and the corporation are estopped from alleging the want of authority in the directors to make the contract. Railway v. Gentry, 69 Texas, 625; 82 Texas, 309; Stafford v. Harris, 82 Texas, 178; Taylor on Priv. Corp., sec. 589; 102 U. S., 420; Beach on Corp., sec. 887; 12 Am. St. Rep., 337; 2 Herm. on Estop., secs. 1178, 1179, 1181.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by appellants, who were stockholders in the Bonham Hotel Company, in Fannin County District Court, against defendants, to cancel certain stock issued to defendants, W. Y. Davis and R. A. Davis, by the directors of said corporation, in payment of certain premises lying in Bonham, in said Fannin County, which said W. Y. and R. A. Davis deeded to said corporation. In the petition filed in the cause the following case is alleged: A corporation was organized in Bonham, Texas, June 3, 1889. Its capital stock was fixed at $40,000; its purpose was to establish and maintain a hotel at Bonham. On June 4, 1889, the corporation purchased parts of two vacant lots fronting on the public square of said town. On June 6, 1889, the corporation purchased part of another vacant lot adjoining the first tract. When the charter of the corporation was filed with the Secretary of State only $18,000 of the capital stock had been subscribed. No by-laws were adopted by the directors for the management of said corporation until after the stock claimed to be illegal was issued.

On July 18, 1889, defendants, W. Y. and R. A. Davis, who owned the Crockett House, were contemplating the erection of a brick hotel, and the directors of the hotel, to induce them (Davises) to desist from building such hotel, purchased their hotel premises from them by paying them $6500 in unsubscribed stock of the corporation. In making said trade the board of directors passed the resolution authorizing the

trade, to the effect, that in consideration of deed being made to said corporation, conveying to it the premises owned by the defendants, and the payment by said defendants of the sum of $4000 in cash, the said corporation would issue to said defendants paid up stock of said corporation amounting to $10,500. The prayer of plaintiffs in their petition was to cancel said stock and restore the parties in statu quo. The plaintiffs in the suit, except E. D. Steger, were all directors when said trade was made. L. C. Wilson intervened in the suit, and alleged substantially the same facts as are alleged by plaintiffs; and further, that he was one of the original promoters of the corporation and took no part in said trade, and did not know of the same until after it was consummated. His prayer was likewise for the cancellation of said stock issued to W. Y. and R. A. Davis. The defendants answered by general and special demurrer, general denial, and a special answer of ratification and estoppel; and that the contract by which the property was conveyed by Davis and wife to the hotel company for stock had been fully executed; that the property conveyed by them to the hotel company had greatly depreciated in value, and defendants could not be placed in statu quo. There was a judgment for defendants, from which this appeal was taken.

The facts proved, and the findings of the court below, which we adopt, show the issuance of a charter for a hotel company; the trade with Davis and wife as hereinafter set out, showing a contract fully executed on both sides, and the acquiescence of the appellants, all of which is more particularly mentioned in the opinion.

The findings of the court below are supported by the testimony, and with some additional facts set out in the opinion, we adopt the same, as follows:

*Findings of Fact.*—1. That on May 31, 1889, plaintiffs, intervenor, and others, entered into an agreement to incorporate a hotel company, and in pursuance thereto, on June 3, 1889, procured a charter from the Secretary of State of Texas for the "Bonham Hotel Company," which charter gave said hotel company authority to establish and maintain a hotel in Bonham, Texas, with an authorized capital of $40,000.

2. That on July 18, 1889, only $18,000 of the capital stock had been issued, and that to the original subscribers thereto; that prior to said July 18 the hotel company had purchased the lots described in plaintiffs' petition as the ones upon which the Hotel Alexander was to be built, and upon which said hotel was in fact afterwards built, and that it was in the contemplation of all the incorporators to build a hotel on said lots at the time they organized said incorporation.

3. That the following named persons were the first board of directors of said hotel company, to wit, J. T. Kennedy, M. W. Halsell, George A. Preston, John Sparges, D. W. Sweeney, Richard B. Semple, John W. Russell, V. A. Ewing, and L. Weathersby; and that at a meeting

of said board, on July 18, 1889, a resolution was passed and spread upon the minutes of the proceedings to the effect, in substance, that said company, in consideration of a deed to the Crockett House property and the payment of $4000 in cash, would issue to the defendants, W. Y. and R. A. Davis, $10,500 in paid-up stock, and lease the hotel when completed, properly furnished, to said defendants for one year at $1800, with the privilege of two years more at the same price, exempting from the hotel property the three storerooms; that the above resolution was made and intended as a proposition to defendants (the Davises), and presented to them, and they accepted the same, and in pursuance thereto, on the same day conveyed to said hotel company the property described in plaintiffs' petition as the Crockett House property, which included the lot, the two-story frame building situated thereon, and also the furniture of said defendants (Davises) which was in said frame hotel, and also paid to said hotel company the sum of $4000 in cash; and that in consideration therefor, said hotel company on the same day issued to the defendants (Davises) $10,500 at par valuation of paid-up stock in said hotel company; that said Crockett House was at that time, and had been for many years, used for a hotel, and that on August 1, 1888, said hotel company took possession of the Crockett House, and has rented it out as a hotel ever since; that about May 1, 1890, said hotel company completed its three-story brick hotel referred to as Hotel Alexander, and defendants (Davises) then took possession of it under the agreement to lease above mentioned, and have since continued to conduct a hotel business therein.

4. That the Crockett House property (which included the house, lot, and furniture) was, on July 18, 1889, worth about the sum of $6500, and that said Crockett House property, together with the $4000 paid by defendants (Davises), was of about the same value at that date as the $10,500 in stock received by them.

5. That all the plaintiffs in this suit, except Mrs. Steger and husband, were directors, and present when said resolution was passed and favored it, and actually consummated the trade with defendants (Davises), except J. W. Russell, who opposed the trade on business principles, but acquiesced in it, and that Mrs. Steger has acquired her stock since from directors who were present and favored and participated in said trade.

6. That intervenor, L. C. Wilson, did not know of the trade when made, but did know of it immediately afterwards.

7. That said first board of directors held their offices (there having been no election held during that time) from the date of the charter until the — day of June, 1890, and during all that time transacted the business of the corporation without ever having adopted any by-laws.

8. That the proceeds of rent of the Crockett House property from August 1, 1889, were received by said hotel company; that all the stockholders, including plaintiffs and intervenor, L. C. Wilson, knew of said trade from the time it was made, and that said hotel company

was receiving the rents of said Crockett House property and acquiesced in said trade, and on January 4, 1891, all participated in and received their respective portions of a dividend on that day declared by said hotel company, which said dividend was composed in part of the rents of said Crockett House; and that since the institution of this suit, to-wit, on the — day of June, 1892, said plaintiffs and intervenor, as well as all other stockholders, likewise participated in another dividend on said last named date declared, which last mentioned dividend was also composed in part of rents from said Crockett House property.

9.   That said Crockett House property is now, and was at the beginning of this suit, worth not more than half as much as it was on the 18th day of July, 1889, when said trade was made; and if said trade be set aside and defendants' (Davises) stock cancelled, said defendants can not be placed back in the same position that they were when said trade was made.

10.   That the rents of said Crockett House, from its occupation by said corporation to August 1, 1892, amounted to $1312.75.   The taxes paid by said corporation on said premises amounted to $85.   Taxes for 1892, assessed and not paid, $43.   Improvements made on said premises by said corporation, $40.   Amount of dividend paid during said period to W. Y. and R. A. Davis, in two dividends, 12 per cent on stock issued to W. Y. and R. A. Davis.

*Opinion.*—The principal questions raised by the assignments of error are these:  1. Did the hotel company have the power, in the manner in which it was done, to make the trade with Davis and wife, whereby, in consideration of the Crockett House property and $4000 in cash, it issued to them $10,500 of the capital stock of said company?  2. Have the appellants the right to raise the question?  3. Are appellants estopped by their acquiescence or ratification of the contract?

It is claimed by appellants that the purchase of the Crockett House property was ultra vires, was the acquisition of property not authorized by the charter, and beyond the express or implied purposes and objects of the corporation, and was null and void.  The charter shows, that the Bonham Hotel Company was organized under the general statutes, and that it was formed for the purpose of establishing and maintaining a hotel.  Its place of business was to be Bonham, in Fannin County, Texas.  Its term of existence was to be ten years, etc.  It was shown that the Crockett House was a hotel in Bonham, kept and owned by Davis and wife.

Under the statute, article 575, subdivision 4, a corporation has power "to hold, purchase, sell, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation may require," etc.  It is claimed by appellants that the purposes of this corporation did not require the Crockett House property, and that its purchase was not to the interest of the company.  The company had power to establish

a hotel in Bonham. It might have established it upon the grounds occupied by the Crockett House, or upon the grounds finally built upon by it, or elsewhere. The purchase of the property was within the legitimate scope of its granted powers, and because the hotel was afterwards built at another place, we are not prepared to adopt the conclusion that the corporation or its stockholders could for that reason repudiate the trade as ultra vires.

We fully appreciate the difficulty in the way of drawing an exact line in every case between acts of a corporation which are ultra vires and those which are intra vires; but under the adjudicated cases, we think there will be little difficulty in arriving at a correct solution of the vital questions involved. It is not every ultra vires act of a corporation that is void.

The fact that at the time of the trade with Davis and wife the corporation had not adopted by-laws would not render the act void. By Revised Statutes, article 581, "the directors or trustees *may* adopt by-laws for the government of the corporation; but such by-laws may be altered," etc. It has never been held that the failure to exercise the permission to make by-laws would render any act of the corporation void; if so, the stock held by appellants themselves might be in some danger.

In Cook on Stock and Stockholders, section 700a, it is said: "According to Blackstone, one of the important features of a corporation is the power to make by-laws. A by-law is a permanent rule of action, in accordance with which the corporate affairs are to be conducted. A by-law differs from a resolution, in that a resolution applies to a single act of the corporation, while a by-law is a permanent and continuing rule, which is to be applied on all future occasions." This is the only difference. In this case the resolution of the corporation was passed and spread upon the minutes, and the trade fully consummated in accordance therewith. On the one hand, the deeds to the property and $4000 in cash were delivered to the company and accepted by it; and on the other, the stock was duly issued and delivered to Davis and wife, who rented the new hotel when built, as well as the Crockett House, and paid the rents, which were duly accepted by the corporation and the proceeds paid to the stockholders, each accepting his share of the dividends without objection or dissent, thereby making a full, complete, and perfect executed contract. This contract being within the scope of the corporate powers, and not being mala in se or mala prohibita, or against public policy, but having been freely executed in good faith by both parties, with the full knowledge and acquiescence of appellants, they can not now be heard to set it aside.

By an examination of the charter, we find that all of the original plaintiffs herein except one were directors of the corporation at the time the contract with Davis and wife was made, and were actually present and participated in the passage of the resolutions by which the trade was consummated. The trade was made July 18, 1889, and

appellants all acquiesced in it, received their dividends, accepted the fruits of it, and appropriated to their own use all the advantages of it until this suit was brought, more than two years afterwards, when the Crockett House property became greatly depreciated in value, when they for the first time sought to set aside the contract. It is not claimed by appellants that there was any fraud in the transaction. It is said by an eminent writer: "The ratification may be by an express agreement or statement to that effect, or it may be by such laches or acquiescence as will amount to an implied ratification. * * * *If the complaining stockholder participated in the act complained of, he of course is barred of his remedy.*" Cook on Stocks and Stockholders, secs. 728, 732; Branch v. Jesup, 106 U. S., 468, 476; United States v. Railway, 98 U. S., 569, 612; Battelle v. Northwestern, etc., 33 N. W. Rep., 327 (Minn., 1887).

Again, Mr. Cook says: "After a stockholder has knowledge, or is chargeable with knowledge, of an ultra vires, fraudulent, or negligent act of the directors, he must institute his suit, if at all, within a reasonable time thereafter. As to what will constitute a reasonable time, depends upon the circumstances of the case. If it is evident that the stockholder is waiting to see if the unauthorized act will be profitable to the corporation, the court will refuse to grant him any relief." See Cook on Stock, etc., sec. 732, note 3, and authorities there cited.

The sale of stock partly for property, unless actually prohibited, can not be classed either as an ultra vires, fraudulent, or negligent act. Id., secs. 17, 18. "The discretion of the directors or majority of stockholders as to acts ultra vires, can not be questioned by single stockholders, unless fraud is involved." Id., sec. 684.

In the May-June number of the American Law Review is an able editorial review of the authorities upon this subject by Mr. Seymour D. Thompson, in which the learned writer says: "If an unlawful, prohibited, or immoral contract has been *wholly executed,* then, the parties to the contract being in pari delicto, the law will not aid either of them to undo it, or to get back what he lost by it, but will leave both of them in the predicament where their unlawful act has placed them. This principle applies to the unlawful acts of corporations, and where such a contract has been fully *executed on both sides,* the law, on its civil side, has no further concern with it." 28 Am. Law Rev., 393.

In Bank v. Matthews, 98 United States, 628, the court says: "Where an incorporation is incompetent by its charter to take a title to real estate, a conveyance to it is not void, but only voidable, and the sovereign alone can object." Railway v. Gentry, 69 Texas, 625; Wood v. Waterworks, 44 Fed. Rep., 146.

In this case, the contract was not only fully executed by the corporation, but with the express assent, and by the acts of most of the appellants who were directors, except Steger and Wilson, who did not object, but acquiesced therein, and knowingly received the benefits of it. At first appellant Russell objected on business grounds, but finally acquiesced in the trade. In case of Publishing Company v. Hitson,

80 Texas, 228, the court says: "It is a reasonable and 'salutary rule' in its application to agencies, that where the principal, with knowledge of the facts, acquiesces in the acts done under an assumed agency, he should not be heard subsequently to impeach them upon the ground that they were done without authority. Kelsey v. Bank, 69 Pa. St., 430. This rule applies to corporations as well as to individuals. An express assent, it is said, is not essential on the part of the stockholders to operate as an equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized, although not illegal, act, and to seek judicial redress." Shelden H. Co. v. Eickemeyer, 90 N. Y., 614; Bond v. Terrell, 82 Texas, 309; Russell v. Railway, 68 Texas, 646. See also Stafford v. Harris, 82 Texas, 178.

We find no error in the judgment below, and it is affirmed.

*Affirmed.*

Delivered June 6, 1894.

Motion for rehearing overruled, September 19, 1894.

Writ of error refused by the Supreme Court, October 15, 1894.