**COPPARD v. FARMERS' & MERCHANTS' STATE BANK. (No. 5622.)***

(Court of Civil Appeals of Texas. San Antonio. March 1, 1916. Rehearing Denied April 5, 1916.)

1. CORPORATIONS ⊸487(1)—POWERS—ULTRA VIRES ACTS—VALIDITY.

It is not every ultra vires act of a corporation that is void.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893, 1898; Dec. Dig. ⊸487(1).]

2. CORPORATIONS ⊸426(1)—ACTS OF AGENTS —RATIFICATION.

An act, ultra vires, though not void, may be ratified either by acquiescence of those charg-

ed with management of the corporation or by affirmative ratification.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702; Dec. Dig. ⊸426(1).]

3. CORPORATIONS ⊸462 — POWERS — MERCANTILE CORPORATIONS.

The mere fact that the buyer of notes was a mercantile corporation would not make ultra vires its act in buying such notes from which it might largely profit.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1816–1819; Dec. Dig. ⊸462.]

4. CORPORATIONS ⊸426(10)—ACTS OF OFFICERS—LIABILITY.

Where money obtained from a loan from the plaintiff bank was placed to the credit of the defendant corporation and credit entered in its passbook, and used to purchase collateral notes for the benefit of the corporation, it could not escape liability on the loan on the ground that it was the independent act of an officer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1702, 1704, 1714; Dec. Dig. ⊸426(10).]

5. CORPORATIONS ⊸414(2)—ACTS OF OFFICERS—LIABILITY.

Where a note was executed by the president of the defendant corporation within the apparent scope of his authority, it was immaterial on the liability of the corporation how the money was to be used.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1641; Dec. Dig. ⊸414(2).]

6. CORPORATIONS ⊸370(3) — POWERS — IMPLIED POWERS.

A corporation is not restricted to the actual wording of its charter, but has implied powers reasonably necessary or usually incident to its business.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1517, 1518; Dec. Dig. ⊸370(3).]

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by M. Coppard, as trustee of the J. L. Bain Mercantile Company, bankrupt, against the Farmers' & Merchants' State Bank. Judgment of nonsuit, and plaintiff appeals. Affirmed.

Jas. D. Crenshaw, of San Antonio, for appellant. J. L. Browne and A. J. Parker, both of San Antonio, for appellee.

CARL, J. Appellant, as trustee of the J. L. Bain Mercantile Company, bankrupt, sued the Farmers' & Merchants' State Bank for the conversion of certain assets of the bankrupt estate of the J. L. Bain Mercantile Company. The plaintiff's petition alleges that J. L. Bain Mercantile Company became bankrupt about April 10, 1913, and plaintiff was duly appointed and qualified as trustee of said estate; that prior thereto various notes and accounts belonging to the bankrupt company were in the hands of the defendant bank for the purpose of collection, the proceeds to be placed to the credit of the Bain Company; that said notes and accounts

amounted to about $3,000; and it is charged that same have been converted by the bank.

The defendant bank, among other things, answered that about October 1, 1912, the J. L. Bain Company was indebted to it and had placed notes and accounts with it to secure such indebtedness, such collateral amounting to about $8,000. The note which was so secured was for $3,193.80, dated October 1, 1912, and due November 1, 1912, with interest at 10 per cent. per annum after maturity, and providing for the payment of 10 per cent. of the principal and interest as attorney's fees, if not paid when due, etc., payable to the order of the Farmers' & Merchants' State Bank and signed by J. L. Bain Mercantile Company, J. T. Cook, and W. M. McCammon. It was further alleged that after the maturity of said note it was placed with an attorney for collection, and thereafter certain credits were made on this note in the aggregate sum of $3,004.08, leaving a balance claimed as due on same in the sum of $397.26, and the bank asserted its right to hold said collateral until said debt was paid in full.

The plaintiff by supplemental petition alleged that said note was executed without authority of the board of directors of the Bain Mercantile Company, and was therefore ultra vires and void; also that the note was the personal debt of McCammon, the Bain Company being a mere surety, and that it was not authorized to become such surety under its charter; that the money so borrowed was obtained by McCammon to take up and pay off his note due the First State Bank of Runge, in the sum represented by the note given.

By supplemental answer, appellee alleged that the note was executed by authority of the board of directors of the Bain Company; that this company received the benefits of the loan; that McCammon owned practically all the capital stock of the Bain Mercantile Company; that no stockholder objected, and that said act in giving the note and placing the collateral was ratified and approved; that McCammon as president of the Bain Company had always signed notes, indorsements of notes, checks, etc., for the corporation, and no act of his had ever been questioned by the stockholders or creditors, and therefore the corporation was estopped to deny his authority to act for it in this instance. It was denied that the corporation was a mere surety, but it is alleged that it was principal and received the benefits, and the proceeds of the note were passed to the corporation's credit.

This cause was submitted on special issues, and the issues and the jury's answers are as follows:

"(1) Was the loan of $3,195.80 made by defendant bank on or about October 1, 1912, as shown by the notes in evidence made for the use and benefit of the J. L. Bain Mercantile Company? Answer this question 'Yes,' or 'No.'
"Yes.

"(2) Did the defendant bank at the time of making the loan for $3,193.80, as shown by the note in evidence, believe that it was making same for the use and benefit of the J. L. Bain Mercantile Company? Answer this question 'Yes,' or 'No.'
"Yes.

"(3) Was there a definite agreement and understanding between W. M. McCammon as president of the said J. L. Bain Mercantile Company and the defendant bank acting through its officers that the money obtained by this loan of $3,193.80 was to be applied and used for the specific purpose of buying and obtaining the notes obtained from the Runge Bank, and that the proceeds of said loan should not be used by the J. L. Bain Company for any other purpose? Answer this question 'Yes' or 'No.'
"No."

Upon said answers, judgment was entered that the plaintiff take nothing, from which this appeal is prosecuted.

The purpose for which the J. L. Bain Mercantile Company was chartered was the purchase and sale of goods, wares, merchandise, agricultural and farm products. It was shown that the Bain Company had been engaged extensively in cotton buying as well as in the mercantile business. The note was made and the loan obtained, as found by the jury for the benefit of the corporation. The deposit slip for the proceeds of the loan, less interest, was issued to the Bain Mercantile Company, and the evidence shows that the collateral notes obtained therewith belonged to that corporation. McCammon was the owner of all the stock of the Bain Company, except two or three shares, for which Cook and the other stockholder had given notes which had never been presented for payment. In other words, McCammon was the corporation, to all intents and purposes. He had commonly acted for the corporation. This transaction occurred October 1, 1912, and the corporation became bankrupt some time in April, 1913. During all this time the stockholders and directors of the corporation knew about the transaction whereby this debt was created on behalf of the corporation. Certainly a majority of the stockholders and directors, because McCammon, who owned all but two or three shares, and Cook, another director, who owned one share for which he had not paid, signed the note personally.

[1] It is not every ultra vires act of a corporation that is void. Steger v. Davis, 8 Tex. Civ. App. 28, 27 S. W. 1068. See Irrigation Co. v. Hahn Bros. & Co., 105 Tex. 236, 146 S. W. 1187; Canadian Telephone Co. v. Seiber, 159 S. W. 905.

[2] There is no reason why an act which is not void may not be ratified, and this ratification may be by acquiescence of those charged with the duty of managing the affairs of the corporation. Ft. Worth Pub. Co. v. Hitson et al., 80 Tex. 228, 14 S. W. 843, 16 S. W. 551.

Judge Hobby says in the case last cited:

"An express assent, it is said, is not essential on the part of the stockholders to operate as an

equitable estoppel upon them. It may be inferred from the failure to promptly condemn the unauthorized, although not illegal, act and to seek judicial redress."

The jury found that the bank, at the time it made the loan, believed that it was making the same for the use and benefit of the Bain Mercantile Company. Even if we concede that the loan was made for the purpose of getting possession of the Runge collateral, that was for the benefit of the Bain Company, because it was thought there was a substantial equity in those notes.

[3] The simple fact that this was a mercantile corporation would not place it beyond its power to conserve and add to its assets by taking over notes where it might largely benefit.

"It has been held that a ratification by a corporation of an unauthorized act of its officers in executing a deed of trust of its property, for the benefit of its creditors, may be ratified by the express sanction of all its shareholders and directors, although no formal resolution to that effect is passed." 10 Cyc. p. 1074.

The same authority says (10 Cyc. p. 1075):

"And even where the act complained of is ultra vires the company, the shareholders collectively, or a minority of them, may lose by their supineness the right to have the aid of a court of equity in undoing the act, under the corporation of the equitable doctrine of laches. Where a voidable act may be ratified by the shareholders, by taking a course of conduct with reference to it, upon full knowledge of the facts, it is immaterial that they proceed in ignorance of the legal effect of such acts."

[4] The money obtained from this loan was placed to the credit of the Bain Company, and credit entered in its passbook. The evidence shows that the collateral notes which McCammon bought were for the corporation's benefit, and a majority of its directors took action in regard thereto and all of its stockholders, except the holder of one share. Gaston v. Campbell Co., 130 S. W. 222; Modern, etc., Co. v. Blanke, 116 S. W. 153; 10 Cyc. pp. 1078 and 1116; Waller v. Gorman Co., 141 S. W. 834.

[5] The note was executed by the president of the Bain Company and within the apparent scope of his authority, and what the money was to be used for or how it was to be expended would make no difference. Houston Land & Loan Co. v. Danley, 131 S. W. 1144.

[6] A corporation is not restricted to the actual wording of its charter, but carries with it those implied "powers which are reasonably necessary to the business, or which are usually incident to its prosecution." Northside Ry. Co. v. Worthington, 88 Tex. 571, 30 S. W. 1055, 53 Am. St. Rep. 778; Ft. Worth City Company v. Smith Bridge Company, 151 U. S. 294, 14 Sup. Ct. 339, 38 L. Ed. 167.

The judgment is affirmed.