## Gulf, Colorado & Santa Fe Railway Company v. Adolphus Holland.

### Decided December 7, 1901.

**1.—Negligence and Contributory Negligence—Railroads—Fact Case—Verdict Sustained.**

See evidence in an action for personal injuries resulting from plaintiff being struck by a moving train within the limits of a city, and relating to negligence of the defendant and want of contributory negligence on plaintiff's part, held to show a case in which the appellate court was not authorized to disturb the verdict.

**2.—Practice on Appeal—Verdict Not Disturbed, When.**

The appellate court will not disturb the verdict of a jury upon the facts unless it is made to appear that the evidence upon which it is based is so inadequate or the verdict so manifestly against the great weight and preponderance of the evidence as to show that the jury were influenced by an improper motive.

Appeal from Washington. Tried below before Hon. Ed. R. Sinks.

*J. W. Terry,* for appellant.

*Beauregard Bryan,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by appellee against the appellant to recover damages for personal injuries alleged to have been sustained by appellee as a result of the negligent operation of one of appellant's trains in the city of Brenham, Texas. The defense urged was contributory negligence on the part of appellee in failing to look and listen for the approaching train. A trial by jury resulted in a verdict and judgment for appellee for $500, from which the railway company appealed and assigned errors.

A reversal is sought alone upon the ground that the verdict is so against the great weight and preponderance of the evidence as to make it manifest that the jury in holding defendant liable for the consequences of the accident were influenced by passion, prejudice, or some other improper motive.

The history of the accident may be thus briefly stated: One of defendant's trains was being handled by its crew within the corporate limits of the city of Brenham, Texas, and at the time in question the crew was engaged in making what is termed a "kicking switch." That is to say, the engine with five cars attached was being backed down in the direction of a street crossing with the purpose of leaving some of the cars on a side track at a point beyond the street crossing, it being intended that when the train had gained enough impetus to send the cars to the point desired, the engine and a part of the cars would be detached and the cars intended to be left on the switch would be permitted, under the control of a brakeman, to roll down to the place on the switch where it was intended they should be stopped. The street crossing in question

was in charge of a flagman in the employ of the company, and it was his duty to warn persons of approaching trains.

. Appellee had walked down the east side of appellant's track until he rarived at a point a few feet from the north side of the street crossing in question, when he turned and undertook to cross to the west side of appellant's track and switches at that point. In going across he did not use the street crossing, but took a somewhat diagonal course, and just as he was about to step from the most westward of appellant's tracks he was struck by appellant's train, knocked down and injured as alleged. The train which struck him was engaged in making the "kicking switch" above described, and the cars were being placed on the switch from which appellee was about to pass when injured. At the time of the collision the engine had been detached from the cars so intended to be placed upon the switch and they were moving by reason of the momentum which had been given them by the engine. The brakeman in charge of the moving cars was not on the car which struck appellee, but was on a box car nearer the engine.

When appellee started across the tracks at the point of the accident he stopped and looked for the train, for he knew it had been switching in the yard. He then discovered that it was standing still beyond the point where the Houston & Texas Central tracks cross the appellant's tracks, and about 250 feet from the point at which the accident occurred. With reference to this appellee testified that when he looked and saw them standing still he thought everything was safe and proceeded to cross at his usual gait. He did not look again and did not hear the approaching cars. The facts show that if he had looked again he could have seen them. Whether he should have heard the approach of the cars is a question which has been resolved in favor of appellee by the verdict, and we can not say it is without support in the evidence on this point, other evidence showing that a wagon was crossing the tracks at the time making considerable noise, and that the flagman and some boys were playing noisily near by. It is also in evidence that several persons called to him when they saw his danger, but he heard them too late to save himself. The moving cars were making very little noise.

An ordinance of the city of Brenham made it unlawful for railway companies to operate their trains within the city limits at a greater rate of speed than six miles an hour. The evidence was conflicting as to the speed of the train, plaintiff's witnesses putting it at fifteen miles an hour. The verdict is supported upon this point.

Appellee had none of the usual and expected warnings of the approach of the cars, and the evidence supports the conclusion that the flagman was not attending to his duty. The evidence was also sufficient to show that the part of the right of way used by appellee in crossing at that point was commonly used by the public for the purpose, had so been continuously used for years, and this renders it immaterial whether or not he was actually on the street crossing when injured. He, however, testified that he was, and he was in fact picked up on the street crossing

after the injury.  From these facts can it be said that appellee was so clearly negligent in failing to look again for approaching cars as to lead us to conclude that the jury arrived at their verdict through the influence of same improper motive?

It is not enough that this court would have arrived at a different conclusion had the facts been presented to us primarily.  The jury has its distinct place in our system of jurisprudence.  The law is that the jury shall be the exclusive judges of the facts proved, the weight of the evidence, and the credibility of the witnesses, and the power of this court to disturb a verdict on the facts where there is any evidence to support it, is called into activity only when it is made to appear that the evidence upon which it is based is so inadequate or the verdict is so manifestly against the great weight and preponderance of the evidence as to lead to the conclusion that the jury rendering it were influenced by an improper motive.  Our laws provide for the selection of jurors of intelligence, honesty, and competency.  It is to be presumed that the jury in this case possessed these qualifications.  What a reasonably prudent person would do or how he would act in a given situation is an unknown quantity.  No general rules have ever been formulated for the control of courts and juries in arriving at a conclusion on the question.  It is addressed almost entirely to the common sense and sound judgment of the jury in the light of their everyday experience, and as the jury is made up of men taken from the everyday walks of life and are supposed to bring to bear upon the case their judgment and experience untrammeled by legal training or technicality, they are admirably fitted to determine a question which is so purely one of fact.  They are better fitted for the task than the trial judge, for their conclusion is the result of the average judgment of twelve average men, fresh from participation in the practical affairs of everyday life.  Of course cases arise in which the contributory negligence of a party so plainly appears that notwithstanding there may be evidence presenting some conflict it is the duty of the trial court to interpose his discretion and set aside the verdict.  The duty of trial judges in this respect is more immediate and arises more frequently than that of appellant courts, for he is an actor in the trial, sees and hears the witnesses, and is in much the same position as the jury as to his opportunity to wisely and justly determine the issue.  The appellate courts are less frequently confronted with this duty, for not only does the approval of the verdict by the trial judge stand between them and the verdict, but their absence from the scene of the trial and a just sense of their lack of opportunity to know many things occurring on a trial and which can not be embodied in a record, renders them reluctant to interfere.  Cases arise not infrequently, however, which call for the exercise of their power in this respect.  Such was the Wilson case, 60 Southwestern Reporter, 438.  Such was the Garcia case, 75 Texas, 583, and many others might be cited.

But after a careful inspection of the facts of the case before us we have concluded we are not justified in interfering.  In this State the

mere failure to look and listen does not as matter of law constitute negligence. It may be true, as found by the jury, that a person of ordinary prudence when he looked and saw the train standing still some distance away would have concluded that he could safely cross without exercising further vigilance. If appellee's account is true the excessive speed of the train is responsible for the accident, for but for this his precaution in looking before starting to cross would have been ample protection against accident.. His failure to hear the noise of the approaching cars is accounted for by the presence of other noises and the fact that the cars were making very little noise. He had the right to expect that the company would observe the city ordinance as to speed and the statutory requirements as to signals. He had the right to expect timely warning from the flagman. None of these were given. Had the brakeman on the moving cars taken a position on the car nearest the appellee he could have averted the accident by the exercise of the slightest care, for in exercising the general duty of lookout which he owed to the public he would have discovered plaintiffs' danger in time to effectively warn him.

A defendant shown to be guilty of negligence resulting in an accident is not acquitted of blame because the injured party was also guilty of negligence contributing to his injury, but recovery is denied on grounds of public policy, because they are both wrongdoers.

That the railway company was shown to be negligent in this case is not questioned.

We are of opinion the evidence supports the verdict. The judgment is therefore affirmed.

*Affirmed.*