## BARTLEY et al. v. MARINO.

(Court of Civil Appeals of Texas. Texarkana. June 26, 1913. Rehearing Denied July 5, 1913.)

1. DAMAGES (§ 143*)—PERSONAL INJURIES—PETITION—ALLEGATIONS OF INJURIES—SUFFICIENCY.

The petition, in an' action for personal injuries, which alleges that plaintiff's skull was fractured, that bones, muscles, and tissues of the head were bruised and injured, that plaintiff was injured in his nervous system and internally, causing profuse bleeding from the ears, nose, and mouth, that his eyesight was almost entirely destroyed, and that an internal injury to the ear and the drum thereof practically destroyed his hearing, and that he suffered a loss of speech and an impairment of mind, sufficiently specifies the injuries as against special exceptions, based on the ground that allegations as to injuries were not sufficiently specific.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 410, 433; Dec. Dig. § 143.*]

2. MUNICIPAL CORPORATIONS (§ 705*)—USE OF STREETS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

One may alight from a wagon in the center of a street, and some distance from a crossing, and go to either side, exercising proper care for his own safety, and an operator of an automobile owes him the duty of exercising ordinary care to avoid colliding with him.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

3. MUNICIPAL CORPORATIONS (§ 706*) — STREETS — COLLISIONS — EVIDENCE — INSTRUCTIONS.

Where, in an action for injuries to a pedestrian, struck by an automobile, there was evidence that the automobile was operated at a speed in excess of that fixed by a municipal ordinance, and that that was the direct cause of the accident, and contributory negligence was not pleaded, a charge that, unless the operator of the automobile was guilty of negligence proximately causing the injury, there could be no recovery, or if the pedestrian was guilty of contributory negligence, or if his injuries resulted from unavoidable accident, there could be no recovery, was sufficiently favorable to defendants.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

4. TRIAL (§ 251*)—INSTRUCTIONS—REQUISITES —ISSUES.

An instruction on contributory negligence, correct in form, is properly refused, where contributory negligence is not pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

5. MUNICIPAL CORPORATIONS (§ 706*) — STREETS — COLLISIONS — NEGLIGENCE — EVIDENCE.

Where there was evidence that the operator of an automobile, striking a pedestrian on the street, negligently ran his car at a speed in excess of the limit fixed by city ordinance, and at a rate that was unreasonable and dangerous in view of the travel on the street, a peremptory instruction to find for defendant on the ground that the collision was the result of an unavoidable accident was properly refused.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by Stephen Marino, by next friend, against S. E. Bartley and another. From a judgment for plaintiff, defendants appeal. Affirmed.

Harry P. Lawther, of Dallas, for appellants. Wilson & Williamson, of Dallas, for appellee.

HODGES, J. On July 26, 1911, Stephen Marino, a boy about 10 years of age, was injured by a collision with an automobile owned by S. E. Bartley, and operated at the time by an employé, W. P. Reeves. Some time afterward Joe Marino, father of the minor, as next friend, instituted this suit against both Bartley and Reeves, and recovered a judgment in the court below for the sum of $2,500. The petition charged negligence on the part of Reeves in the operation of the automobile, alleging that, at the time the accident occurred, the car was being driven at a rapid rate of speed in excess of 12 miles per hour, the speed limit fixed by an ordinance of the city of Dallas. The injuries claimed are thus set out in the plaintiff's petition: "(a) His skull was fractured on the right side of. the head about an inch above the ear; said fracture being about two inches square in space if same were squared. (b) His skull was fractured for a distance of four inches, leading from the square part up near the center of the head, ranging backward to the lower part of same. (c) The bones of the head were crushed, broken, and fractured, and the muscles and tissues of the head were crushed, bruised, stretched, and strained, and otherwise injured in like character, and he was also injured in his nervous system, and internally, from which injuries he bled profusely from his ears, nose, and mouth, which hemorrhages continued for some time. (d) Plaintiff's eyesight has been almost entirely destroyed; he suffered an injury to his internal ear, and the drum thereof, which has practically destroyed his sense of hearing; he has suffered a total loss of speech; his mind has been impaired, perhaps totally destroyed, by reason of said injuries, and the great and sudden shock to his nervous system; his grave and permanent internal injuries, eruptions of blood vessels, and injury to the secretive organs of his body, the hemorrhages, mucus matter that flowed from his ear—by reason of all of which, the inner and outer tissues of his injured parts have become tensed, strained so that the locomotion of his body, head, and neck has been greatly and permanently impaired; that the plaintiff has unnatural sensations and nervous rigors, hallucinations, and is given to sudden fits and starts as his fancies come and go, and that he had sustained a loss of mental power and of the will by reason of said injuries, and thereby has become and has been rendered a cripple for life."

[1] The first two errors assigned complain of the refusal of the court to sustain special exceptions based upon the objection that certain allegations as to injuries received were not sufficiently specific. All of the evidence adduced upon the trial as to the extent and character of the injuries inflicted seems to have been admitted without objection, and is ample to warrant the amount of the judgment rendered; in fact there appeared to be no effort to question the nature of the injuries or their extent. We think the court properly overruled the exceptions.

[2,3] The facts show that the collision occurred about 9 o'clock in the morning on Main street, between Pearl and Preston streets, in the city of Dallas. That section of Main street was then used, by dealers in vegetables and fruits, as a kind of city market, and at that hour of the day, and on

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

that occasion, several huckster wagons were standing on both sides of the street. The center of the street was occupied by the street car track. The street ran east and west. Stephen Marino was seated in a delivery wagon with Clyde Hunt, another boy, and the two were driving along this portion of the street, near the north side, going west. Clyde Hunt was doing the driving. They were returning from another portion of the city, where they had been to deliver some goods, and expected to stop the vehicle at Hunt's store, which was only a few feet distant from where the accident occurred. Reeves and some friends were in an automobile owned by Bartley, going in the same direction. The automobile approached the wagon from the rear, when the boys arrived at a point not far from the center of the block. Clyde Hunt testified that he intended to stop at his father's store on the north side, and had turned his horse in that direction; that Stephen Marino was sitting on the seat by his side, and while the wagon was still moving the latter jumped to the ground and started toward the south side of the street to find his father; that Stephen had only time to go three or four steps before he was struck by the automobile, which approached rapidly from the east. He says he discovered the automobile about the time Stephen struck the ground, and that it was then about 25 or 30 feet distant, and was going twice as fast as he (Clyde Hunt) could run, but he was unable to estimate the rate of speed in miles per hour. There was other testimony tending to show that the automobile was, at the time, going at the rate of 25 or 30 miles an hour. Reeves and his companions testified that the car was going at a rate of speed not exceeding eight miles per hour; that as it approached the wagon Reeves turned to the left and attempted to pass it, and just as the front of his car got even with the rear wheels of the wagon the Marino boy, without giving any warning or notice, jumped to the ground in front of the automobile; that as soon as Reeves discovered the boy's position, he did everything in his power to stop his car, but was unable to do so before striking the boy. It is admitted that the city of Dallas has an ordinance limiting the speed of automobiles, within the territory where the accident occurred, to 12 miles per hour. The ordinance also requires that "drivers of automobiles shall operate them at no greater rate than is reasonable and proper, having regard to the traffic and use of the street by others, so as to endanger the life or limb of any person thereon."

The court gave the following special charge: "The court charges you, at the request of the plaintiff, that the pedestrian has the right to use any part of the public street, including the sidewalk for traveling, and if you believe from a preponderance of the evidence that Stephen Marino got off of the wagon testified about, and undertook to go from the north side of Main street to the south side thereof, traveling in a diagonal direction, that he had the lawful right so to do, and in so doing he also had the right to assume that all persons in charge of automobiles and driving same on and along said street would drive and operate the same in a lawful manner." This charge is objected to on the ground that it "was inapplicable to the facts of the case, and, under the circumstances, highly prejudicial to the defendants." In the argument following the above proposition counsel for appellants insists that, inasmuch as the injured boy, when struck, was not using a crossing or sidewalk, but was passing from one side of the street to the other between crossings, Reeves was not required to keep a lookout for the purpose of discovering his presence in the street. It is asserted that no duty on the part of Reeves arose till he actually discovered Stephen Marino, and that the latter was in danger of being injured. In amplifying the basis of the objection counsel says: "The special charge given at the request of plaintiff was erroneous and highly prejudicial, in that under the circumstances of the case it virtually instructed the jury that the plaintiff had the right to jump from a moving wagon into the middle of the street at the time and place in question, and that, if the driver of the car had been using the street in a lawful manner, the collision would not have occurred." The wagon in which Stephen Marino was at the time riding was not far from the center of the street. He had the legal right to alight therefrom and go to either side. While he was under the duty of exercising a proper degree of care for his own safety, to be determined by his age and surroundings, he was not a trespasser in the street, and parties operating vehicles owed him the duty of exercising ordinary care to avoid collisions with him. To say that such parties owed no such duty till they actually discovered him on the street would be treating him as an intruder without the legal right to be there. While drivers of vehicles might be expected to use a smaller quantum of diligence to discover the presence of pedestrians at such points than would be exacted at public crossings, the degree of care required is the same. Any person lawfully using the highway has a right to assume that others will conform to the legal regulations adopted for their government. No one is bound to anticipate that another will be negligent, or will commit an unlawful act. G., C. & S. F. Ry. Co. v. Holland, 27 Tex. Civ. App. 397, 66 S. W. 68; Ft. W. & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S. W. 533; I. & G. N. Ry. Co. v. Gray, 65 Tex. 32. This special charge did not take from the jury the issue of negligence on the part of Reeves. When considered in its entirety, the charge of the court was much more favorable to the appellants than they had a right to demand. The jury

was plainly told, that unless they found that Reeves was guilty of negligence which proximately caused the injury, to find for the defendants. They were also instructed that if they believed the plaintiff was guilty of contributory negligence, or that his injuries were the result of an unavoidable accident, to find for the defendants. Considering the fact that contributory negligence was not pleaded, and that there was ample evidence tending to show that Reeves was running his car at an unlawful rate of speed, and that this was the direct cause of the accident, there is nothing in the charge complained of that was calculated to mislead the jury.

[4] The fourth and fifth assignments of error complain of the refusal of the court to give special instructions regarding contributory negligence on the part of Stephen Marino in attempting to cross the street at the time and under the circumstances he did. Even if these instructions were in form correct, and that issue had not been already fully presented in the general charge of the court, they might have been properly refused, because contributory negligence was not pleaded. Lewis v. Ry. Co., 57 Tex. Civ. App. 585, 122 S. W. 605.

[5] The last assignment of error is based upon the refusal of the court to give a peremptory instruction for the appellants upon the ground that the undisputed evidence showed that the collision was the result of an unavoidable accident. We do not so view the evidence. If that offered by the appellee is to be accepted, Reeves was, at the time, guilty of negligently running his car at not only a rate of speed in excess of the limit fixed by the city ordinance, but a rate that might be considered unreasonable and dangerous upon a public thoroughfare, such as that section of the street is described to be.

The judgment of the district court is affirmed.