BENFORD LUMBER MFG. CO. et al. v. KNOX. (No. 6623.)

(Court of Civil Appeals of Texas. Galveston. May 26, 1914. Rehearing Denied June 11, 1914.)

1. APPEAL AND ERROR (§ 1003*)—REVIEW—QUESTIONS OF FACT.

Appellate courts are only authorized to disturb the finding of a jury upon a question of fact, when there is no evidence to support such finding, or when it is so manifestly against the great weight and preponderance of the evidence as to lead to the conclusion that the jury was influenced by an improper motive, and hence an assignment of error, complaining that the verdict was contrary to the preponderance of the evidence, raised no question for review.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3938–3943; Dec. Dig. § 1003.*]

2. CORPORATIONS (§ 432*) — OFFICERS AND AGENTS—AUTHORITY—SUFFICIENCY OF EVIDENCE.

In an action against a lumber corporation for the purchase price of a steam log loader, evidence *held* to support a jury finding that its assistant superintendent in charge of the operations of its sawmill plant had authority to purchase the loader.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1717, 1718, 1724, 1726–1735, 1737, 1743, 1762; Dec. Dig. § 432.*]

3. CORPORATIONS (§ 410*) — OFFICERS AND AGENTS—AUTHORITY—ESTOPPEL.

Where the president of a lumber corporation referred a party who solicited the purchase of a steam log loader to the assistant superintendent in charge of the corporation's sawmill plant, he held out the assistant superintendent as authorized to purchase the loader, even though in fact he had no such authority.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1629–1632; Dec. Dig. § 410.*]

4. CORPORATIONS (§ 426*) — OFFICERS AND AGENTS — UNAUTHORIZED ACTS — RATIFICATION.

Even though the assistant superintendent in charge of a lumber corporation's sawmill plant had no authority to buy a steam log loader, his act in buying it was ratified, where the president and general superintendent knew that he had bought it, and that it was in almost daily use, received daily reports of its operation without raising any objection to its use, and accepted the benefits thereof without repudiating the purchase.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1596, 1702–1704, 1707, 1708, 1710–1716; Dec. Dig. § 426.*]

5. SALES (§ 441*)—WARRANTY—SUFFICIENCY OF EVIDENCE.

In an action for the purchase price of a steam log loader, evidence *held* to support the jury's finding that there was no warranty by the seller that the loader would do a certain amount of work.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1277–1283; Dec. Dig. § 441.*]

Appeal from District Court, Polk County; L. B. Hightower, Judge.

Action by Hiram Knox against the Benford Lumber Manufacturing Company and anoth-

er. From a judgment for plaintiff, defendants appeal. Affirmed in part, and reversed and rendered in part.

Hill & Hill and Holshousen & German, all of Livingston, and Kilpatrick, McCollum & Kilpatrick, of Kansas City, Mo., for appellants. Campbell & Campbell, of Livingston, for appellee.

McMEANS, J. Hiram Knox brought this suit against the Benford Lumber Manufacturing Company and the Glen Lumber Company to recover $4,000 and interest, the purchase price of a steam log loader alleged to have been sold by plaintiff to defendants on the 23d day of February, 1911.

Defendants answered by general denial and specially pleaded in substance, among other matters, that the defendant Benford Lumber Manufacturing Company was incorporated under the laws of the state of Missouri, and the Glen Lumber Company was incorporated under the laws of the state of Kansas, and both were authorized to do business in Texas; that at no time did W. C. Gallimore, the assistant superintendent of defendants, or any other person, except T. Gunter, the president of defendant companies, have authority to purchase from plaintiff the loader and skidder and legally bind defendants to pay for the same, and, if there was in fact any such purchase, the same was unauthorized, and the party making the purchase was without authority to so purchase it; that, if any negotiations were entered into, the loader and skidder was delivered to defendants experimentally and with the understanding there was no purchase so as to bind defendants, except by approval of the president of said companies, and that the president never approved the purchase. They further alleged that the loader and skidder failed to do the work plaintiff guaranteed it would do, and that it was worthless, and that, after a trial of it in which its worthlessness was proved, the same was turned back to plaintiff, and he was notified that it was subject to his disposal, and he was requested to remove the same.

Plaintiff, by way of replication to defendants' answer, alleged in substance that, after exhibiting the loading machine to defendants for 20 days and demonstrating its usefulness for loading logs on cars, defendants were pleased and so expressed themselves through their manager, and thereafter, on the 23d day of February, 1911, defendants purchased the loader and agreed to pay for it as alleged in their original petition; that plaintiff did not sell or recommend the machine as a skidder; and that the defendants elected to take the machine for loading purposes only, at the price of $4,000. He further alleged that defendants placed W. C. Gallimore in charge and management of their mill plant at Benford, and held out to plaintiff and to the world that said Gallimore had authority to act for them, and that he did purchase for defendants the loading machine; and that defendants proceeded to use the machine under their contract of purchase, loading onto cars with said machine during the months of March to September, inclusive, 8,-778,654 feet of logs, and during all of said time ratifying and confirming said purchase and asking additional time for payment, all of which was within the knowledge of T. Gunter, the president of defendant companies. There were other allegations in this pleading, but, in the view we take of the case, a statement of them is unnecessary.

The case was submitted to a jury upon special issues, and upon the coming in of their verdict the court found in favor of plaintiff for the sum of $4,566.66, being for the purchase price of the loading machine and 6 per cent. interest per annum from February 23, 1911, and judgment was accordingly entered in plaintiff's favor for said amount. From this judgment the defendants have appealed.

Appellants' first assignment of error is as follows:

"The jury erred in finding that there was an agreed and closed contract between Hiram Knox and the defendant companies, or either of them, for the purchase of the log loader and skidder in question. The preponderance of the evidence shows that such contract was never legally entered into, agreed to, closed, and made binding on defendants, or either of them, with Hiram Knox; but, on the contrary, the preponderance of the evidence shows that the agents of the company negotiating with Hiram Knox for the purchase of the log loader and skidder had no authority to close the contract of purchase and bind the defendant companies, or either of them, to the contract of purchase of said machine."

[1] It will be observed that the gravamen of the complaint presented by this assignment is that the preponderance of the evidence did not justify the jury's finding, but, on the other hand, the preponderance of the evidence shows that the agents of appellants, who negotiated for the purchase of the machine, had not the authority to bind appellants. Manifestly this assignment does not present any error which would authorize this court to reverse the judgment of the court below. Appellate courts are only authorized to disturb the finding of a jury upon a question of fact when there is no evidence to support such finding, or when the finding is so manifestly against the great weight and preponderance of the evidence as to lead to the conclusion that the jury was influenced by an improper motive. Railway v. Lee, 32 Tex. Civ. App. 23, 74 S. W. 349; Railway v. Rowell, 45 S. W. 763; Railway v. Holland, 27 Tex. Civ. App. 397, 66 S. W. 68. This assignment does not assail the verdict upon either of these grounds, and therefore fails to point out any error which would authorize this court to disturb the findings complained of. But, waiving this objection, we think there is evidence in the record sufficient to

sustain the finding of the jury that there was a binding contract of sale for the log-loading machine entered into between the appellant Benford Lumber Manufacturing Company and appellee Knox. As to the binding force of the contract upon the appellant Glen Lumber Company, we will have more to say in the discussion of the next succeeding assignment of error.

The machine in question was invented by appellee Knox, and was designed to load sawlogs on cars, and also to skid logs lying some distance away from the railway track. It was so contrived as to run on its own steam power upon the tracks of a railroad or tramway. The loading was done by the use of steam. The Benford Lumber Manufacturing Company is a corporation chartered under the laws of Missouri, and had established, and on and prior to February 21, 1911, was operating, a sawmill plant at Benford, Tex. T. Gunter was its president, as well as the president of the Glen Lumber Company, and resided and kept his office in Kansas City, Mo. T. G. Roberts was general superintendent and resided and kept his office at Shreveport, La. W. C. Gallimore was assistant superintendent and resided and kept his office at Benford and was in active charge of the operations of the sawmill plant at that place. All of appellants' witnesses agree that only the president, Gunter, had authority to make purchases in behalf of his companies of such machinery as the log loader in question, but that the assistant superintendent, Gallimore, had no such authority. It was shown that the negotiations leading up to the sale and its final consummation were directly between Knox and Gallimore, so that, before plaintiff was entitled to a judgment, it was incumbent upon him to prove: (1) That Gallimore was intrusted with general authority to make such purchase; or (2) if he was not, that he was authorized by Gunter to buy the loader; or (3) if he was not so authorized, then that Gunter for his companies, or one of them afterwards ratified his act in purchasing it. Upon all of these points, the testimony was conflicting, but it is not our province to settle the conflict, that being the peculiar province of the jury, but only to ascertain whether there was any evidence upon which the jury could have reasonably based their finding.

[2, 3] The witness C. A. Cunningham testified that he was connected with the sale of the loading machine to the "Benford people"; that he knew Gunter and spoke to him about buying the machine; that Gunter told him that he had noticed the machine but very little, and referred the witness to Gallimore, the manager in charge of the plant, saying that he (Gallimore) would attend to that; that he was on the ground and manager of the mill; and that any arrangement witness made with Gallimore would be all right. This testimony was sufficient, we think, to justify the jury in finding: (1) That Gunter gave his assent for Gallimore to purchase this very machine; and (2) that Gallimore, as the manager of the mill, had general authority to make such purchases. The testimony to prove that Gallimore afterwards purchased the machine, agreeing to pay $4,000 therefor in two equal payments, 6 and 12 months, respectively, after the date of the purchase, with 6 per cent. per annum interest on the deferred payments, is ample. The president, Gunter, further testified that he visited the sawmill once between the months of January and July, 1911, and saw the loading machine in operation. He further said he had received a few letters from the manager, Gallimore, concerning the machine, which letters he had turned over to the attorneys of appellants.

R. C. Handley, shipping clerk for the Benford Lumber Manufacturing Company, in February and March, 1911, testified that he heard Gallimore read a letter from Gunter making inquiry about the machine and asking what he had done about the loader, and he heard Gallimore dictate a letter to Gunter in which he stated that he had closed the trade with Mr. Knox for it a day or two before, and that he was well pleased with it.

Roberts, the general superintendent, testified that daily reports were sent to both himself and Gunter showing the operation of the loading machine each day for the months from February to September, both inclusive. These reports show that the entire cut of the mill for these months were of logs exclusively loaded by the loading machine, except for parts of the months of August and September and two days in July.

C. Torrence testified that the loading machine loaded a sufficient number of logs onto cars to keep the mill running until it was injured by bringing it into collision with a tree near the track, and that after this they could not do good work with it.

We think the foregoing testimony, if believed by the jury, as it evidently was, was sufficient to justify the finding that the contract of purchase and the promise to pay for the machine were, in the circumstances, binding upon appellant Benford Lumber Manufacturing Company. If Cunningham spoke the truth, and the jury evidently believed he did, the jury was warranted in finding that Gallimore, as manager of the mill, had the authority to buy the machine. If, as a matter of fact, he did not have such authority, then Gunter, by referring Cunningham to him with regard to the purchase of the loader, held him out to Cunningham as having such authority.

[4] Again, even if Gallimore had no authority to buy the machine, and even if he was not held out by appellant as having such authority, we think that the appellant Benford Lumber Manufacturing Company, having full knowledge that he had bought it, knowing that it was in almost daily use, and receiving daily reports of the operation of

the loader, without raising any objection to its use, but accepting the benefits thereof, and without in any way repudiating the purchase, must be held to have ratified the act of Gallimore in buying it. The assignment is overruled.

The next assignment complains that the evidence is not sufficient to show that the Glen Lumber Company made the contract of purchase through C. W. Gallimore, or that that company is in any way liable to appellee for the purchase price of the loading machine. We think this assignment must be sustained. There is no evidence that the Glen Lumber Company was engaged in the operation of the Benford Lumber Manufacturing Company's plant at Benford, or that it purchased or authorized the purchase of the machine, or that the machine was purchased for it. As before shown, they were separate corporations. There was evidence to the effect that the Glen Lumber Company owned the Benford Lumber Manufacturing Company, but it was not sought to be held liable on the ground that it had bought the property and franchise of the Benford Lumber Manufacturing Company, but on the ground only that both corporations had bought the machine. This contention was not sustained by the proof.

Appellants' eighth and ninth assignments have been sufficiently disposed of by what we have said in disposing of the assignment first discussed.

[5] The tenth assignment complains that the jury's finding that there was no contract of warranty or guaranty on the part of Knox that the machine would do a certain amount of work is contrary to a preponderance of the testimony.

Again waiving the sufficiency of the assignment, but treating it as a complaint that there was no evidence to warrant such a finding, we answer that Knox himself testified that he made no such warranty, and gave no such guaranty, but that Gallimore bought the machine after having seen it in operation for a period covering several days, and upon the demonstration thus made only. If this was not true, and if there was such a guaranty, the evidence is sufficient to sustain the conclusion that the guaranty was complied with. The assignment is overruled.

The two remaining assignments, the seventh and twelfth, have been carefully examined by us, and we are of the opinion that neither of them points out reversible error.

We are of the opinion that as to the Benford Lumber Manufacturing Company the judgment of the court below should be affirmed, and that as to the Glen Lumber Company the judgment should be reversed, and judgment here rendered in its favor; and it has been so ordered.

Affirmed in part. Reversed and rendered in part.