## HOUSTON ELECTRIC CO. v. McNATT et al. (No. 9001.)

Court of Civil Appeals of Texas. Galveston. June 23, 1927.

Rehearing Denied July 14, 1927.

1. **Appeal and error ⬤⟲1094(1)—Court of Civil Appeals' decision whether verdict is against preponderance of evidence is final.**

Court of Civil Appeals' jurisdiction over, and determination of, question whether verdict is against overwhelming weight and preponderance of evidence, is exclusive and final.

2. **Appeal and error ⬤⟲1002—Conflicting evidence of street railway's negligence and automobile passenger's freedom from negligence held for jury, precluding appellate court from disturbing verdict.**

In action to recover for personal injuries to automobile passenger arising out of collision

---

between automobile and defendant's street car, evidence of defendant's negligence and plaintiff's freedom from negligence *held* to present only such conflict as fell within jury's exclusive province to resolve, so that Court of Civil Appeals was without authority to disturb verdict.

Appeal from District Court, Harris County; Ray F. Campbell, Judge.

Action by Adeline McNatt and husband against the Houston Electric Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Walter H. Walne and St. John Garwood, all of Houston, for appellant.

Samuel Schwartz, of Houston, Marcus Schwartz, of Hallettsville, and Presley K. Ewing, of Houston, for appellees.

GRAVES, J. This action to recover for resulting personal injuries to Mrs. McNatt arose out of a collision at the intersection of Main street and Eagle avenue in the city of Houston on June 18, 1923, between appellees' automobile going north on Main and appellant's street car going west on Eagle.

The issues of fact raised by the pleadings and evidence were submitted to a jury in a series of special inquiries, in answer to which they found that:

(1) The antecedent release interposed in bar of the claim sued upon had been obtained from appellees through misrepresentations by appellant's agent, and was not binding on them.

(2) The motorman, on the occasion of the collision, negligently (a) ran the street car faster than was reasonably safe for crossing Main street at that time and place; (b) failed to sound the gong of the car upon approaching and before crossing Main street; (c) proceeded onto and across Main street without bringing the car to a stop; (d) that each of these three negligent acts was a proximate cause of Mrs. McNatt's injuries.

(3) The collision was not an unavoidable accident.

(4) Neither Mr. McNatt, who was driving the automobile at the time, nor Mrs. McNatt, who was riding on its back seat, failed under all the then existing circumstances to exercise ordinary care.

(5) $5,000 would be fair compensation for Mrs. McNatt's injuries.

Judgment in favor of appellees for the sum so named therein duly followed the verdict, and the electric company appeals.

But one presentment is made to this court. It is that the verdict finding appellant guilty of, and the appellee free from, negligence, as well as that each separate act of the former's negligence was a proximate cause of the injuries suffered, was against the overwhelming weight and preponderance of the evidence.

[1] Conscious that our jurisdiction over, and determination of, this single question is exclusive and final (Barron v. Railway [Tex. Com. App.] 249 S. W. par. 4, at page 829), careful consideration has been given it.

[2] After reviewing the statement of facts and the arguments, however, we are unable to agree that the overwhelming weight and preponderance of the evidence establishes the contrary of any of the jury's challenged findings, but conclude rather that there is presented from the evidence as a whole only such conflict as fell within the jury's exclusive province to resolve. This court is therefore without authority to disturb the verdict. Gulf, C. & S. F. R. Co. v. Holland, 27 Tex., Civ. App. 397, 66 S. W. 68; Gulf, C. & S. F. R. Co. v. Mangham, 29 Tex. Civ. App. 486, 69 S. W. 80.

The controversy mainly raged around whether or not the motorman, on approaching and entering upon Main street, sounded his gong, stopped, or reasonably moderated the speed of his car, on the one hand, and whether or not the appellees, on the other, looked, listened, or otherwise exercised ordinary care, in the operation of their automobile as it came down Main street toward the point of collision. There were sharp conflicts between the witnesses for the two opposing sides over all these matters.

Appellant's motorman, a woman passenger on the street car at the time, and a bystander who happened to be on Eagle avenue nearby all testified that, just before entering Main street, the car stopped, then entered and proceeded slowly into it until the collision occurred, while the woman and motorman added that the latter, after so stopping, also sounded its gong and looked south on Main for incoming automobiles before starting on across. As against this, the appellees and a young woman who was with them in the automobile all testified that the street car did not stop on approaching Main street, did not sound its gong or otherwise give them any warning of its coming, but ran into and across Main street to the point of the collision at a very rapid rate of speed; Mr. McNatt admitting, however, that he was too deaf to have heard the gong if it had sounded, and saying that no one in the automobile told him it did sound.

By the uncontroverted proof there was high growth, or shrubbery, back on private property some feet away from the southeast corner of the intersection of these two streets, which seriously obstructed the view of persons approaching each other as the occupants of these two moving conveyances were until they severally came near to the intersection thereof.

The exculpatory testimony for the appellees was to the general effect that they were driving down Main street near the inside curb of its eastside driveway at about 10 to possibly 15 miles per hour, looking ahead of

them, not knowing that a street car line crossed it in that vicinity, and being unable on account of this high shrubbery to see any distance toward the east down Eagle avenue until they got to it, when for the first time they saw the street car crossing very rapidly out of Eagle into Main; that it came so fast and so suddenly, without warning of any kind to them, that there was no time or opportunity for anything else than to throw on their brakes, which "were in good condition and working fine," and which they immediately did, but struck the street car near its center, toward the rear end; Mr. McNatt estimating the impact as being rather toward the front end.

Appellant countered with testimony from its motorman and the lady passenger, in substantial part, as follows: From the lady:

"As well as I can remember, the motorman stopped the car, and let a negro boy get off, and he looked down towards the end of Main street, the inbound side, and saw a car coming at a high rate of speed, about 40 miles per hour, and the motorman, when he started his car up (there was a car entered Eagle street, and he slowed down to let this car pass), and evidently saw this car coming, and he speeded up his car; he saw it was going to hit, and, as he got a little past the front of the car, this car had an awful shriek, he put on the brakes. and it hit the rear end of the street car, and the motorman stopped the car after that. * * *

"That car that was running 40 miles per hour was coming down on Main street, the inbound side. I saw that. When I saw that, the motorman stopped to let the negro off. He let the negro off at the corner of Main and Eagle, and, when he stopped that car, I could see down on the inbound side of Main street, I could plainly see. From the right-hand side where I was sitting I could see to the end of Main street."

From the motorman:

"I got to Main and Eagle street, and I made the stop at Main street, and when I stopped there was a little Ford truck came off Main street driven by a negro, and he turned into Eagle going east on Eagle street, and he made a very short turn in front of the car, and I stood there until he got by, and, while standing there, I let a negro boy get off the car, and tapped my gong, and started on the trip, looking to the left, and seeing nothing on the inbound driveway, everything was clear, and I went on straight across the street, and, when I got to the esplanade, entering the outbound driveway, there was two automobiles going outbound, and I had to slow down and let them pass, and, when they passed, I started ahead again, and I heard some.one slam on the brakes of an automobile or some kind of vehicle coming inbound on the inbound driveway on Main street, and I was in motion going across the outbound driveway, and heard it strike the car, and I stopped the car and stepped off to see if his car was caught under my car. * * *

"With reference to where was my street car on Main street and the esplanade at the time of the collision, it was about middle ways of the

outbound driveway. The front of it, that is, about the position of the car, and it was in motion when Mr. McNatt hit the back end of the car. The front part of the car was in the middle of the outbound driveway. I stopped the street car. When I stopped I was about three feet of being to the outside curb line on the outbound driveway. My car is 40 feet long. After I stopped, with reference to what position my car was in with reference to blocking any portion of this driveway in Main street, the outbound driveway would be blocked, but they would be passing behind the car on the inbound driveway."

No physical or mathematical facts exhibited demonstrated with anything like conclusiveness the correctness of either version of what occurred. It was therefore for the jury, not this appellate court, to choose between them.

This conclusion requires an affirmance of the trial court's judgment. That order will enter.

Affirmed.