## FULLER CONST. CO. v. GREAT SOUTHERN LIFE INS. CO. et al. (No. 3177.)

Court of Civil Appeals of Texas. Amarillo.
April 10, 1929.

O. F. Wencker, of Dallas, for appellant. Henry Yeager and Homer Clouse, both of Dallas, for appellees.

HALL, C. J. The town of Highland Park instituted this suit against S. S. Self to recover upon a paving certificate issued to the Fuller Construction Company for the proportionate amount of the cost of paving Hughes drive in front of lot 12, block 2, Mt. Vernon Heights addition. The amount of the certificate is alleged to be $598.03, for which sum, together with reasonable attorney's fees, judgment

is sought against Self. The Great Southern Life Insurance Company and Ealy J. Moses were made defendants by the allegation that they asserted some interest in the title to the property, but that the same is subordinate and inferior to the lien created by the paving assessment, which plaintiff asserts is a first and superior lien, and for which plaintiff prays a foreclosure.

The Fuller Construction Company intervened, asserting that it was the owner of the certificate and all rights thereunder and prayed for judgment in its favor for the amount of the certificate, with foreclosure of the lien, which it asserts is a first and prior lien.

The Great Southern Life Insurance Company answered that it had a lien securing a debt in the sum of $7,000; that its lien was superior to the paving lien by reason of a subordination agreement executed by the Fuller Construction Company.

Ealy J. Moses answered that he had a lien securing an indebtedness to him in the sum of $3,490, which was inferior to the lien of the Great Southern Life Insurance Company, but superior to the paving lien asserted by the plaintiff by reason of a subordination agreement executed by the Fuller Construction Company.

The intervener, Fuller Construction Company, filed a trial amendment denying that the subordination agreement was the act and deed of the Fuller Construction Company, because D. J. Mays, Jr., who executed said agreement as vice president, was not vice president, in fact, and had no authority to execute the same, either under by-law or resolution, and further pleaded failure of consideration for the subordination agreement.

By supplemental answers, the defendants alleged that the vice president was held out as such, that his act in executing the subordination agreement had been ratified by the Fuller Construction Company, and sought to make Mays a party to the suit.

The case was tried to the court without the intervention of a jury and resulted in a judgment in favor of the Fuller Construction Company against S. S. Self for $251.16 and $50 attorney's fees, and decreed that the lien of the Great Southern Life Insurance Company should be a first lien, that Moses' lien should be a second, and that the Fuller Construction Company's lien should be a third lien, inferior to the defendants' liens.

The subordination agreement contains this paragraph:

"Now, therefore, in consideration of the premises and the sum of $1.00 and other matters deemed valuable, Fuller Construction Company, a corporation, acting by and through its vice-president, J. D. Mays, hereunto duly authorized, does hereby convenant and agree unto and with the said S. S. Self

and C. S. Kersh, their heirs and assigns, that the liens securing its said hereinabove described two notes for the principal amounts of $658.71 and $384.31, respectively, shall be third and inferior to the liens and subservient to the liens securing the payment of said above described mechanic's lien notes for the principal amounts of $7,000.00 and $3,494.00, and any and all renewals and extensions thereof which shall be secured by superior liens to the liens securing the said notes owned and held by said Fuller Construction Co."

This agreement is dated July 7, 1923, and filed for record July 12, 1923, and acknowledged in statutory form.

In the first paragraph of the agreement there is this recital:

"Whereas, heretofore, on the 11th day of April, 1923, S. S. Self executed, acknowledged and delivered to the Fuller Construction Company, a corporation, * * * his two certain mechanic's lien agreements and contracts to secure the payment of one certain mechanic's lien promissory note for the principal amount of $658.71 and one certain mechanic's lien promissory note for the principal amount of $384.31," etc.

The statement of facts shows that on December 12, 1923, the town council of Highland Park, acting under an ordinance of the town authorizing it, levied a special assessment of $598.03 upon the lot involved, payable to the appellant for the pavement constructed in front of said lot. The order making the levy fixes a lien on the lot to pay the amount of the assessment and states that the improvement has been made. On April 11, 1923, Self executed a mechanic's lien upon the same lot to secure another note for $658.71 for improvements, which the record discloses is a pavement in front of the lot. This was filed for record April 25, 1923.

The first contention urged by the appellant is that the liens mentioned in the first paragraph quoted above from the subordination agreement refers only to the contract lien of April 11, 1923, and does not and cannot refer to the assessment lien sought to be foreclosed in this suit.

The record fails to disclose any other liens upon the lot in favor of the construction company and there is neither allegation nor proof of a mistake in writing the subordination contract.

The record further shows that the town council passed the ordinance under which the assessment was levied, on the 12th day of April, 1923. The ordinance itself is not in the record, but the certificate sued upon recites that: "All the proceedings with reference to making said improvements have been regularly had in compliance with the terms of Chapter 2, [11], Title 22, Revised Statutes of Texas of 1911 and the charter of the town and that the prerequisites to the fixing of

the lien and personal liability by this certificate, have been performed."

■■ Although Mays, who executed the subordination agreement, testified in person as a witness, he made no statement in any way supporting the contention of appellant that the agreement was not executed for the purpose of postponing both the liens. This being the state of the record, we must presume that not only the assessment lien, but the contract lien, were both intended to be postponed by the agreement and that, although the certificate was not issued until December, the lien itself had been previously fixed by ordinance and the necessary proceedings of the town council, which are presumed to have been regular and valid. Smith v. Ernest, 46 Tex. Civ. App. 247, 102 S. W. 129; Pinson v. Vesey, 23 Tex. Civ. App. 91, 56 S. W. 593.

■ The next contention to be considered is that the court erred in holding that Mays could bind appellant by the execution of the subordination agreement, because he was not an officer of the appellant at that time, and the next contention is that the court erred in holding that the Fuller Construction Company ratified Mays' action in executing the agreement and was bound by its ratification.

It appears from Mays' testimony that while he was a resident of Kansas City, Mo., Richey, the president of appellant company, offered him a position with said company as promoter, with the duty of getting contracts for paving in the territory in which appellant company operated. He testified that, a few days after he reached Dallas, Mr. Mangrum, who was formerly with appellant company, suggested to Richey that he thought it would be a good idea to make Mays vice president and that Richey consented. He further stated that he came to Dallas, knowing that he was going to be vice president of the company, and the record shows that he was elected vice president at a directors' meeting held three days after the subordination agreement was signed. He stated that, a very short time after he signed the agreement, he told Mr. Wencker, the attorney of appellant, that he had signed it; that Wencker told Mr. Richey of the fact that Mays had signed it and at the same time Wencker stated that it was a very foolish thing to do. He stated that about two years afterwards, when the assessments were being paid regularly, he told Richey that he was right and Wencker was wrong. The agreement was signed about five years prior to the institution of this suit and the testimony shows that no effort was made by the appellant to cancel the agreement, nor was it ever repudiated by any of the officers or stockholders prior to the institution of the suit. The defendant Ealy J. Moses, who purchased one of the

lien notes about six months after the execution of the subordination agreement, testified that he purchased the note, relying on the agreement. He stated:

"On the 10th of January, 1924, I purchased from Mr. Kersh a note executed by S. S. Self and wife, payable to C. S. Kersh. At the time I purchased the note, I don't think they furnished me an abstract of title pertaining to that lot, but I think I went to the record and read it over myself. I went to the abstract company and got a notation of the instruments and came down to the county clerk's office and read them. Among the instruments was a deed of trust from S. S. Self and wife for the benefit of the Great Southern Life Insurance Company. I also read this instrument here (subordination agreement) dated July 7, 1923. I relied upon the instrument of record in purchasing this note. I foreclosed on that property, but the trustee's deed has not been placed of record. I am the owner of the property at this time under that foreclosure."

■■ The rule seems to be established that the assent or approval of a corporation to acts done on its account may be inferred in the same manner that the assent of a natural person may be, and where a corporation, with full knowledge of the unauthorized act of its officers of agents, acquiesces therein, it thereby ratifies them, especially where the acquiescence results in prejudice to a third person. Harwood v. Fort Worth National Bank (Tex. Civ. App.) 205 S. W. 484; Fort Worth Publishing Co. v. Hitson, 80 Tex. 216, 14 S. W. 843, 16 S. W. 551; Knowles v. North Texas Traction Co. (Tex. Civ. App.) 121 S. W. 232; Canadian Long Distance Telephone Co. v. Seiber (Tex. Civ. App.) 159 S. W. 897; Kincheloe Irrigation Co. v. Hahn Bros., 105 Tex. 231, 146 S. W. 1187; Bunn v. City of Laredo (Tex. Civ. App.) 213 S. W. 320; Benford Lumber Co. v. Knox (Tex. Civ. App.) 168 S. W. 32.

The judgment is affirmed.